UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
SHEILA CLOONAN,                           )
                                          )
        Plaintiff,                        )
                                          )
            v.                            )        Civil Action 08-0700 (HHK)
                                          )
MICHAEL B. MUKASEY, et al.,               )
                                          )
        Defendants.                       )
_____)

## THE FEDERAL DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S PRIVACY ACT AND DEFAMATION CLAIMS

Plaintiff Sheila Cloonan (the "Plaintiff"), an employee of the United States Marshals Service, has brought this action for violation of the Privacy Act and for common law defamation against a number of government officials—Michael B. Mukasey, Jeffrey A. Taylor, John F. Clark and David Barnes (collectively, the "Federal Defendants"). Plaintiff's Complaint asserts one Privacy Act claim against the Federal Defendants and one defamation claim against Federal Defendant Barnes.[1] The Privacy Act claim is brought against the Federal Defendants in their official capacities. The defamation claim is brought against Federal Defendant Barnes in his individual capacity. For the reasons set forth in the attached Memorandum of Points and Authorities, the Privacy Act and defamation claims that Plaintiff has brought against the Federal Defendants fail as a matter of law. Accordingly, the Federal Defendants respectfully request that this Court grant their Motion to Dismiss and for Summary Judgment as to Plaintiff's Privacy Act and Defamation Claims.

---

[1] Plaintiff has also brought a defamation claim against Paul T. Stein, Federal Defendant Barnes's former attorney. Mr. Stein is not a government employee and, thus, is not represented by the undersigned counsel. Mr. Stein has submitted a separate response to Plaintiff's Complaint. (See Docket No. 11.)

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

SHEILA CLOONAN,                    )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )        Civil Action 08-0700 (HHK)
                                   )
MICHAEL B. MUKASEY, et al.,        )
                                   )
        Defendants.                )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE FEDERAL DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S PRIVACY ACT AND DEFAMATION CLAIMS

Plaintiff Sheila Cloonan (the "Plaintiff"), an employee of the United States Marshals Service (the "USMS"), has brought this action for violation of the Privacy Act and for common law defamation against a number of government officials—Michael B. Mukasey, Jeffrey A. Taylor, John F. Clark and David Barnes (collectively, the "Federal Defendants"). Plaintiff's Complaint asserts one Privacy Act claim against the Federal Defendants and one defamation claim against Federal Defendant Barnes.[1] Those claims are premised upon: (1) Federal Defendant Barnes's alleged communication of certain Privacy Act-protected information and defamatory statements concerning Plaintiff to his former counsel, Paul T. Stein; and (2) Mr. Stein's subsequent inclusion of that information and those statements in a letter dated October 22, 2007 (the "October 22, 2007 letter") that he sent to a number of third parties. The

_____

[1] Plaintiff has also brought a defamation claim against Paul T. Stein, Federal Defendant Barnes's former attorney. Mr. Stein is not a government employee and, thus, is not represented by the undersigned counsel. Mr. Stein has submitted a separate response to Plaintiff's Complaint. (See Docket No. 11.)

Privacy Act claim is brought against the Federal Defendants in their official capacities.  The

defamation claim is brought against Federal Defendant Barnes in his individual capacity.

As demonstrated below, Plaintiff's Privacy Act and defamation claims fail as a matter of

law.  Plaintiff's Privacy Act claim against the Federal Defendants fails because Plaintiff cannot

establish that a violation of the Privacy Act occurred in connection with Federal Defendant

Barnes's communications with Mr. Stein or the issuance of the October 22, 2007 letter.  As a

general rule, the Privacy Act prohibits agency personnel from disclosing information about a

person without that person's consent only if the information was obtained directly or indirectly

from agency records.  Here, none of the information concerning Plaintiff that was communicated

to Mr. Stein and referenced in the October 22, 2007 letter was obtained by Federal Defendant

Barnes (or anyone else) from agency records.  Rather, all of the information was obtained by

Federal Defendant Barnes during the course of his own personal experiences with Plaintiff and

through communications with others who had interacted with Plaintiff and had shared their

experiences with him.  Plaintiff's defamation claim against Federal Defendant Barnes fails

because:  (1) it is properly brought not against Federal Defendant Barnes in his individual

capacity, but rather, against the United States under the Federal Tort Claims Act ("FTCA"); and

(2) this Court lacks subject-matter jurisdiction over a claim for defamation brought against the

United States under the FTCA.

## BACKGROUND

At all times relevant to this action, Plaintiff was an employee of the USMS.  (Compl. ¶7.)

Beginning in 2000 and continuing through June 2007, Plaintiff held a GS-13 level position with

the USMS and was duty-stationed in Atlanta, Georgia.  (Barnes Decl. ¶4.)[2]  Although Plaintiff

was duty-stationed in Atlanta, Georgia, she reported to, and was supervised by, individuals in the

USMS's headquarters office in Arlington, Virginia.  (Id.)  From 2000 through October 2006,

Plaintiff's second-level supervisor was Federal Defendant Barnes.  (Id.)  Since 1990, Federal

Defendant Barnes has been duty-stationed in the USMS's headquarters office in Arlington,

Virginia.  (Id. at ¶2.)  While Federal Defendant Barnes was in Plaintiff's supervisory chain of

authority, Plaintiff filed numerous formal complaints of employment-related misconduct against

him.  (Barnes Decl. ¶4; see Compl. ¶22.)  Thereafter, Plaintiff continued to file formal

complaints of employment-related misconduct against Federal Defendant Barnes.  (See Compl.

¶24.)  Plaintiff filed her complaints with, among other entities, the Occupational Safety and

Health Administration and the USMS's Office of Equal Employment Opportunity.  (See Compl.

¶¶22, 24.)

        In June 2007, Plaintiff received notice that as of September 2007:  (1) her GS-13 level

position would be eliminated due to a reorganization of USMS resources; and (2) she would be

separated from the USMS pursuant to Reduction-in-Force procedures.  (See Ex. 1.)  However, as

an alternative to a Reduction-in-Force separation from the USMS, Plaintiff was offered a GS-12

level position with the USMS in Glynco, Georgia beginning in September 2007 (the "June 2007

offer").  (Id.)  Plaintiff accepted the June 2007 offer.  (See Compl. ¶18.)

        Shortly thereafter, in August 2007, Plaintiff filed an administrative appeal with the Merit

Systems Protection Board ("MSPB") against the USMS challenging the elimination of her GS-

13 level position in Atlanta, Georgia and her reassignment to a GS-12 level position in Glynco,

Georgia.  (Compl. ¶28.)  In her MSPB appeal, Plaintiff identified Federal Defendant Barnes as

---

[2] Citations in the form "(Barnes Decl. ¶__)" refer to the declaration of David Barnes, which is attached hereto.

being responsible for the elimination of her GS-13 level position and her subsequent

reassignment to a GS-12 level position.  (Band Decl. ¶5; <u>see</u> Compl. ¶29 ("Ms. Cloonan

subsequently identified Mr. Barnes in that appeal.").)[3]  Federal Defendant Barnes was not,

however, named as a defendant in the MSPB appeal; the appeal was filed against the agency.

(<u>See</u> Compl. ¶¶30-31.)

        By the end of September 2007, Joseph Band, an attorney in the USMS's Office of

General Counsel, had been assigned to defend the USMS against Plaintiff's MSPB appeal.

(Band Decl. ¶¶1, 4.)  In October 2007, discovery commenced on Plaintiff's MSPB appeal, and

Plaintiff's legal representative, Kevin Byrnes, contacted Mr. Band and informed him that

Plaintiff wished to depose Federal Defendant Barnes in connection with her MSPB appeal.  (<u>Id.</u>

at ¶6.)  Mr. Band, in turn, contacted Federal Defendant Barnes (during the course of a regular

work day) and orally informed him that:  (1) Plaintiff had filed an MSPB appeal challenging the

USMS's elimination of her GS-13 level position in Atlanta, Georgia and her reassignment to a

GS-12 level position in Glynco, Georgia; (2) Plaintiff had identified him as being responsible for

the challenged agency action; and (3) Plaintiff's counsel was seeking to take his deposition in

connection with the MSPB appeal.  (<u>Id.</u> at ¶7; Barnes Decl. ¶5.)  In addition, "to obtain

information that [he] believed was necessary to properly defend the agency against [Plaintiff's]

MSPB appeal," Mr. Band asked Federal Defendant Barnes to provide him with a description of

the nature of his involvement in the decision to eliminate Plaintiff's GS-13 level position in

Atlanta, Georgia and to offer her a reassignment to a GS-12 level position in Glynco, Georgia.

(Band Decl. ¶7; <u>see</u> Barnes Decl. ¶6.)  Federal Defendant Barnes responded orally by stating that

he had had no involvement in that decision.  (Band Decl. ¶7; Barnes Decl. ¶6.)  While

---

[3] Citations in the form "(Band Decl. ¶__)" refer to the declaration of Joseph Band, which
is attached hereto.

communicating with Federal Defendant Barnes, Mr. Band did not disclose to Federal Defendant

Barnes any agency records relating to Plaintiff.  (Band Decl. ¶8; Barnes Decl. ¶7.)  Nor did he

discuss with Federal Defendant Barnes information about Plaintiff that he had retrieved from

agency records.  (Band Decl. ¶8.)  Rather, Mr. Band merely provided Federal Defendant Barnes

with an oral summary of the issues raised by Plaintiff in her MSPB appeal so that he could

determine the extent of Federal Defendant Barnes's involvement with respect to those issues.

(Id.)

       Following his communications with Mr. Band (and during the course of his regular work

day), Federal Defendant Barnes contacted his attorney, Mr. Stein, by telephone from his USMS

office and discussed with Mr. Stein:  (1) the substance of his communications with Mr. Band;

(2) complaints of employment-related misconduct that Plaintiff had previously filed against him;

and (3) information that he had learned about Plaintiff from his own personal experiences with

Plaintiff and from colleagues who had interacted with Plaintiff and had shared their experiences

with him.  (Barnes Decl. ¶8.)  Federal Defendant Barnes "expected that Mr. Stein would take

whatever action [Mr. Stein] deemed appropriate as [his] representative to ensure that Mr. Band

and the rest of the USMS (and any other relevant parties) were clear as to [his] non-involvement

in the matters raised by [Plaintiff] in her MSPB appeal."  (Id. at ¶10.)  Federal Defendant Barnes

also "expected that Mr. Stein would make it clear to the USMS that [Plaintiff's] MSPB appeal

was . . . merely the latest of her many non-meritorious complaints of employment-related

misconduct involving [him]."  (Id.)

       Importantly, none of the information that Federal Defendant Barnes discussed with

Mr. Stein pertaining to Plaintiff was obtained from agency records.  (Id. at ¶9.)  Rather, it was

either:  (1) information about Plaintiff's MSPB appeal that Federal Defendant Barnes had

learned from Mr. Band; or (2) information about Plaintiff that Federal Defendant Barnes had

learned from his own personal experiences with her or from colleagues who had interacted with

her and had shared their experiences with him.  (See id. at ¶8.)

     Mr. Stein then drafted and sent out the October 22, 2007 letter.  The letter was addressed

to Mr. Band (and copied to six other people who were involved in Plaintiff's various

employment-related complaints).  (See Compl. Ex. 1 at 1, 4.)  In the letter, Mr. Stein, inter alia:

(1) informed Mr. Band that Plaintiff "may have misrepresented facts regarding Mr. Barnes with

the MSPB"; and (2) confirmed that the issues raised by Plaintiff in her MSPB appeal do "not

involve . . . Mr. Barnes."  (Id. at 2, 4 ("Mr. Barnes has not been in [Plaintiff's] chain of command

since September 30, 2006, and had nothing to do with the decision when the agency evidently

offered [Plaintiff] employment at [the GS-12 level in Glynco, Georgia]. . . . There is not one

scintilla of evidence that Mr. Barnes had anything to do with [Plaintiff's] new assignment . . .

.").)  In the October 22, 2007 letter, Mr. Stein also requested that any future depositions or

interviews of Federal Defendant Barnes be coordinated through Jacob A. Stein, who also

represented Federal Defendant Barnes at that time.  (Id. at 1.)  Finally, Mr. Stein included in the

October 22, 2007 letter information about Plaintiff and her prior conduct as it related to Federal

Defendant Barnes.  (See id. at 1-4.)  Federal Defendant Barnes reviewed the October 22, 2007

letter prior to its issuance.  (Barnes Decl. ¶11.)  Federal Defendant Barnes understood the letter

to have multiple purposes, including to "provide Mr. Band with a formal, written, and definitive

response to his question as to whether [Federal Defendant Barnes] had had any involvement in

the issues raised by [Plaintiff] in her MSPB appeal" and to "provide the agency with information

about [Plaintiff] that would be helpful to it in defending against her MSPB appeal."  (Id.)

Each of the statements in the October 22, 2007 letter about Plaintiff reflects information that Federal Defendant Barnes disclosed to Mr. Stein and that Federal Defendant Barnes obtained from his own personal experiences with Plaintiff or from colleagues who had interacted with her and had shared information about her with him.  (See id.)

- For example, the letter states that "it is documented in writing that [Plaintiff] entered an elevator in the Atlanta Federal Building and Courthouse and started talking to staff that her boss was going to jail, naming Mr. Barnes."  (Compl. Ex. 1 at 2-3.)  This statement was based on information that Federal Defendant Barnes learned from an email that was sent to him in June 2006 by Norman Hylton, the Assistant Chief Deputy U.S. Marshal for the Northern District of Georgia.  (See Barnes Decl. Ex. A ("I thought you should know that [Plaintiff] was on an elevator today in the Federal Bldg. . . . She began talking out loud to the individuals on the elevator that Dave Barn[e]s was going to jail . . . .").)

- The letter also states that "it appears from the record that [Plaintiff] could not even get along with staff in the Atlanta USMS office that she did not work for.  She had multiple concerns and complaints filed by operational District staff in Atlanta against her for constant, documented, as they said 'unstable fits of rage.'  They documented [Plaintiff's] behavior in writing when it happened using this exact language.  Multiple managers will evidently confirm her disruptions . . . ."  (Compl. Ex. 1 at 2.)  These statements were based on information that was reported to Federal Defendant Barnes by USMS staff stationed in Atlanta, Georgia.  (Barnes Decl. ¶11.)  For instance, in an email that was forwarded to Federal Defendant Barnes in July 2006, Mr. Hylton stated that:  (1) Plaintiff "typical[ly causes] . . . disturbance[s] . . . over unfounded issues"; (2) "I am already tying up much of my time answering a frivolous complaint that [Plaintiff] filed" against a USMS employee; and (3) "[c]onsidering [Plaintiff's] unstable fits of rage[,] I would just ask that you consider the damage that she is causing to our District and assist us if you can."  (Barnes Decl. Ex. B.)

- Finally, the letter states that:  (1) "[Plaintiff] has evidently been involved in an orchestrated campaign with other staff to repeatedly file unfounded, false, allegations against Mr. Barnes"; (2) "[Plaintiff] has not prevailed in any complaints that she has filed against Mr. Barnes in the past few years"; (3) "[Plaintiff] has been involved in filing multiple, false complaints for the past several years with various entities . . . and Mr. Barnes' supervisors"; (4) "[i]t appears that [Plaintiff's] latest attempt[] to vilify Mr. Barnes now lays at the doorstep of the [MSPB]"; and (5) "[t]he overall USMS employment record for [Plaintiff] will evidently depict an employee that has been very disruptive to government operations for years."  (Compl. Ex. 1 at 1-2.)  These statements were based on Federal Defendant Barnes's own personal experiences as:  (1) Plaintiff's second-level supervisor; and (2) the primary focus of her numerous formal complaints of employment-related misconduct.  (Barnes Decl. ¶11.)

## LEGAL STANDARDS

The Federal Defendants seek summary judgment as to Plaintiff's Privacy Act claim pursuant to Federal Rule of Civil Procedure 56.  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met its burden, the non-movant "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson, 477 U.S. at 248.

The Federal Defendants seek the dismissal of the defamation claim asserted against Federal Defendant Barnes pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that this Court lacks subject-matter jurisdiction over that claim.  Federal courts are courts of limited jurisdiction and must dismiss claims over which they lack subject-matter jurisdiction. Runkle v. Gonzales, 391 F. Supp. 2d 210, 219-220 (D.D.C. 2005); Greene v. Nguyen, No. 05-0407, 2005 WL 3275897, at *1-*2 (D.D.C. Sept. 7, 2005).  The party seeking to invoke the jurisdiction of a federal court bears the burden of establishing the court's subject-matter jurisdiction.  Runkle, 391 F. Supp. 2d at 220; Greene, 2005 WL 3275897, at *2; see U.S. Ecology, Inc. v. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  In deciding a motion to dismiss for lack of subject-matter jurisdiction, a court is not limited to the allegations contained

8

in the complaint; it may consider materials outside the pleadings.  <u>Herbert v. Nat'l Academy of Sciences</u>, 974 F.2d 192, 197 (D.C. Cir. 1992); <u>Greene</u>, 2005 WL 3275897, at *2.

## ARGUMENT

### A.    Plaintiff's Privacy Act Claim Against the Federal Defendants Fails

Plaintiff asserts that the USMS (acting through Federal Defendant Barnes) violated the Privacy Act by disclosing to Mr. Stein (and, through Mr. Stein, to others) information about her that is contained in a USMS system of records without her consent.  (Compl. ¶38.)[4]  <u>See</u> 5 U.S.C. § 552a(b).[5]  Yet, as explained below, even assuming (for purposes of the instant motion) that Federal Defendant Barnes did disclose to Mr. Stein information about Plaintiff that is contained in a USMS system of records without her consent, there was no Privacy Act violation because the information that Federal Defendant Barnes disclosed to Mr. Stein was not obtained from an agency system of records.

"[T]he Privacy Act does not prohibit <u>all</u> nonconsensual disclosures of information found in an [agency's system of] records."  <u>Mulhern v. Gates</u>, 525 F. Supp. 2d 174, 182 (D.D.C. 2007) (emphasis in original).  Rather, it prohibits the nonconsensual disclosure of information found in an agency's system of records only if the information was "directly or indirectly retrieved [by the disclosing party] from a system of records."  <u>Fisher v. Nat'l Inst. of Health</u>, 934 F. Supp. 464,

---

[4] Plaintiff also asserts that she "suspects" that "[a]gency[] counsel" was involved in the alleged disclosure of information about her to Mr. Stein.  (<u>See</u> Compl. ¶5.)  However, Plaintiff has not alleged any facts that support her assertion.  Moreover, Plaintiff's assertion is belied by the sworn declarations from Mr. Band and Federal Defendant Barnes that are attached to the instant motion.  (<u>See</u> Band Decl. ¶8; Barnes Decl. ¶12.)

[5] The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains."  5 U.S.C. § 552a(b).  For purposes of the instant motion, and the instant motion only, the Federal Defendants will assume that the information that Federal Defendant Barnes disclosed to Mr. Stein exists in a record that is contained in an agency system of records and was disclosed without Plaintiff's consent.

473 (D.D.C. 1996), aff'd without opinion, 107 F.3d 922 (D.C. Cir. 1996); see Krieger v. Dep't of

Justice, 529 F. Supp. 2d 29, 47 (D.D.C. 2008); Mulhern, 525 F. Supp. 2d at 182. Thus, subject

to one narrow exception that is discussed in the next paragraph below, if an agency official

discloses information about an individual that was originally obtained from a source other than

an agency's system of records, there has been no violation of the Privacy Act. See Fisher, 934 F.

Supp. at 473 ("'[T]he disclosure of information derived solely from independent sources is not

prohibited by the statute even though identical information may be contained in an agency

system of records.'" (quoting Thomas v. Dep't of Energy, 719 F.2d 342, 345 (10th Cir. 1983));

Mulhern, 525 F. Supp. 2d at 182 ("[E]ven if an official discloses information that exists in the

agency's records, the disclosure is rarely actionable unless the official physically retrieved the

information from those records. If the official's knowledge of the disclosed information derives

from sources that are not protected 'records,' then the disclosure rarely implicates the Privacy

Act."). The above-described limitation on liability for nonconsensual disclosures of information

found in agency records is known as the "rule of retrieval." See Krieger, 529 F. Supp 2d at 47.

     In Bartel v. Federal Aviation Administration, 725 F.2d 1403 (D.C. Cir. 1984), the D.C.

Circuit announced a narrow exception to the generally-applicable rule of retrieval. In that case,

the D.C. Circuit held that there could be a violation of the Privacy Act in a situation—like that

present in Bartel—where an agency official discloses his personal recollection of the results of

an agency investigation that he had instituted, despite the fact that he may not have actually

reviewed the record created in connection with the investigation prior to making the disclosure.

See id. at 1409-11. Bartel stands for the narrow proposition that "an agency official [who] uses

the government's 'sophisticated . . . information collecting' methods to acquire personal

information for inclusion in a record and then discloses that information in an unauthorized

fashion without actually physically retrieving it from [a] record system" cannot invoke the rule of retrieval. Id. at 1410; see id. at 1411 ("[I]t would hardly seem an 'intolerable burden' to restrict an agency official's discretion to disclose information in a record that he may not have read but that he had a primary role in creating and using, where it was because of that record-related role that he acquired the information in the first place.").

There are two crucial things to note about the Bartel decision. "First, the Court of Appeals repeatedly, on six occasions, stated that its ruling was based on the particular facts of that case." Fisher, 934 F. Supp. at 474; see, e.g., Bartel, 725 F.2d at 1409 ("a rigid adherence to the 'retrieval standard' makes little sense in this case" (emphasis in original)). "Second, the Court of Appeals did not reject the retrieval rule for use in other scenarios." Fisher, 934 F. Supp. at 474. Indeed, it specifically distinguished Bartel from a case where "'the official alleged to have divulged protected information had knowledge of the facts disclosed independent of any record in the plaintiff's [official personnel file] or elsewhere.'" Bartel, 725 F.2d at 1409 (emphasis in original) (quoting Jackson v. Veterans Admin., 503 F. Supp. 653, 656 (N.D. Ill. 1980)).

Here, there can be no violation of the Privacy Act because Federal Defendant Barnes did not disclose to Mr. Stein (and the October 22, 2007 letter does not contain) information about Plaintiff that is derived from agency records. (Barnes Decl. ¶¶9, 11.) Rather, as discussed above (see supra 5-7), the information that Federal Defendant Barnes disclosed to Mr. Stein (and that is referenced in the October 22, 2007 letter) was obtained by Federal Defendant Barnes from his own personal experiences with Plaintiff and from his communications with others who had also interacted with Plaintiff and had shared their experiences with him. (See Barnes Decl. ¶¶9, 11.) Because Federal Defendant Barnes did not disclose to Mr. Stein or anyone else information

about Plaintiff that was obtained from agency records, Plaintiff's Privacy Act claim against the Federal Defendants fails as a matter of law.  See Krieger, 529 F. Supp. 2d at 47, 49 (finding that the plaintiff had failed to state a claim for a Privacy Act violation where the information that the agency official disclosed was derived from her own first-hand experiences with the plaintiff); see also Krieger v. Fadely, 199 F.R.D. 10, 13 (D.D.C. 2001) ("The Privacy Act speaks to the disclosure of records; it does not create a monastic vow of silence which prohibits governmental employees from telling others what they saw and heard merely because what they saw or heard may also be the topic of a record in a protected file.").

Although Plaintiff may argue that the narrow exception to the rule of retrieval that was announced in Bartel applies in this case, it does not.  The circumstances of this case are readily distinguishable from those in Bartel.  Unlike in Bartel, this case does not involve allegations that a supervisor disclosed information gathered during the course of an investigation that the supervisor was responsible for implementing.  Federal Defendant Barnes did not "use[] the government's 'sophisticated . . . information collecting' methods" to acquire the information that he disclosed to Mr. Stein.  Cf. Bartel, 725 F.2d at 1410.  (See Barnes Decl. ¶¶9, 11.)  Moreover, in light of the sworn declarations submitted herewith, there can be no reasonable dispute that the information that was communicated to Mr. Stein and referenced in the October 22, 2007 letter was obtained from sources entirely independent of agency records.  (See Barnes Decl. ¶¶9, 11.)

**B.    Plaintiff's Common Law Defamation Claim Against Federal Defendant Barnes Fails**

Plaintiff asserts that Federal Defendant Barnes and Mr. Stein defamed her in the October 22, 2007 letter by making false statements about, inter alia, her integrity and mental fitness.  (See Compl. ¶¶46-55.)  However, as explained below, Plaintiff's defamation claim against Federal Defendant Barnes fails because:

- Federal Defendant Barnes's actions in connection with the October 22, 2007 letter occurred within the scope of his federal employment;

- the United States is thus properly substituted as defendant for purposes of Plaintiff's defamation claim against Federal Defendant Barnes;

- all tort claims against the United States arising from acts committed by federal officials while acting within the scope of their employment, including claims for defamation, must be brought pursuant to the FTCA;

- the United States has not waived its sovereign immunity under the FTCA with respect to claims for defamation; and therefore

- this Court lacks subject-matter jurisdiction over Plaintiff's defamation claim as it relates to Federal Defendant Barnes.

1.    The United States is properly substituted as defendant for purposes of Plaintiff's defamation claim against Federal Defendant Barnes and, thus, the claim converts to one against the United States arising under the FTCA

Where a plaintiff files a common law tort claim against a federal official in his individual capacity and the Attorney General (or his designee) files a certification that the federal official was acting within the scope of his employment when he engaged in the conduct out of which the claim arose: (1) the United States is presumptively substituted for the federal official as the defendant; and (2) if the certification is not challenged or is challenged and upheld, the claim converts to one against the United States arising under the FTCA. See 28 U.S.C. § 2679(d)(1); 28 C.F.R. § 15.4(a); Rasul v. Myers, 512 F.3d 644, 645-55 (D.C. Cir. 2008); Greene, 2005 WL 3275897, at *2. The Attorney General's certification (or that of his designee) "constitutes prima facie evidence that the [federal official] was acting within the scope of his employment" when he engaged in the challenged conduct and that the claim is properly brought against the United States under the FTCA. Rasul, 512 F.3d at 655 (internal quotation marks omitted). Once a certification has been filed, the plaintiff bears the burden of challenging the certification "by

coming forward with specific facts rebutting the certification." Id. (internal quotation marks omitted).

In this case, the Attorney General's designee—Rudolph Contreras, the Chief of the Civil Division of the United States Attorney's Office for the District of Columbia—has certified that Federal Defendant Barnes's actions in connection with the issuance of the October 22, 2007 letter were within the scope of his employment.  (See Ex. 2.)  As demonstrated below, that certification was proper.

Whether a federal official—in this case, Federal Defendant Barnes—was acting within the scope of his employment when he engaged in the challenged conduct is "'governed by the law of the place where the employment relationship exists.'" Rasul, 512 F.3d at 655 (quoting Majano v. United States, 469 F.3d 138, 141 (D.C. Cir. 2006)); see Harbury v. Hayden, 522 F.3d 413, 417 (D.C. Cir. 2008).  Because Federal Defendant Barnes was employed by the USMS in its headquarters office in Arlington, Virginia at the time he engaged in the challenged conduct, the scope of the employment inquiry is governed by Virginia law.  See Majano v. United States, 545 F. Supp. 2d 136, 144 (D.D.C. 2008) ("because [the federal employee] was employed . . . in Washington, D.C., District of Columbia law applies").[6]

"Virginia courts construe scope of employment broadly, holding that even intentional torts may be within the scope of employment." Doyle-Penne v. Muhammad, No. 99-2101, 2000

---

[6] Some D.C. Circuit and D.C. district court cases state that the scope of the employment inquiry is governed by the law of the state where the alleged tort occurred.  See Council on Am. Islamic Relations v. Ballenger, 444 F.3d 659, 663 (D.C. Cir. 2006); Greene, 2005 WL 3275897, at *3.  Plaintiff here alleges that "the acts complained of were directed toward and caused harm to [her] in the District of Columbia."  (Compl. ¶16.)  Yet, even if this Court were to find that District of Columbia law—and not Virginia law—governs the scope of the employment inquiry here, such a finding would not affect the end result.  As shown below (see infra 15-17 & nn.8, 9), Federal Defendant Barnes was acting within the scope of his employment when he engaged in the challenged conduct regardless of whether Virginia or District of Columbia law applies.

WL 1086906, at *2 (4th Cir. Aug. 4, 2000); see Majorana v. Crown Cent. Petroleum Corp., 260

Va. 521, 524, 527 (2000) (gas station employee who assaulted customer may have been acting

within the scope of his employment); Plummer v. Ctr. Psychiatrists, LTD., 252 Va. 233, 236-37

(1996) (psychiatrist who had sexual encounter with patient may have been acting within the

scope of his employment).  Under Virginia law, the test for determining whether an employee

was acting within the scope of his employment is "'whether the service itself, in which the

tortious act was done, was within the ordinary course of' the employer's business."  Gina Chin &

Assocs. v. First Union Bank, 260 Va. 533, 541, 544 (2000) (rejecting the view that an employee

must have been acting with an intent to benefit his employer to have been acting within the scope

of his employment).  In applying this test, courts focus on whether "the employee's wrongful

conduct was related to the nature of the employment."  Blair v. Defender Servs., Inc., 386 F.3d

623, 628 (4th Cir. 2004); see Doyle-Penne, 2000 WL 1086906, at *2 ("Virginia law considers

whether the events that led to the tort naturally could have arisen out of the employee's

performance of his duties."); Gulf Underwriters Ins. Co. v. KSI Servs., Inc., 416 F. Supp. 2d 417,

421 (E.D. Va. 2006) ("an employee's tortious activity is in the scope of his employment if

committed 'in execution of the service for which he was engaged'").[7]

        Here, there can be no question that Federal Defendant Barnes's actions in connection

with the issuance of the October 22, 2007 letter were "related to the nature of [his] employment"

with the USMS.  Blair, 386 F.3d at 628.  Indeed, as shown below, those actions were a direct and

natural consequence of:  (1) Plaintiff having identified him as being responsible for the agency

---

        [7] Courts applying Virginia law have found that defamatory statements may be within the
scope of employment.  See Johnson v. Carter, 983 F.2d 1316, 1322-24 (4th Cir. 1993); Farquhar
v. United States, No. 07-1033, 2007 WL 4233492, at *5-*7 (E.D. Va. Nov. 28, 2007); Robinson
v. Egnor, 699 F. Supp. 1207, 1215 (E.D. Va. 1988).

action that she was challenging in her MSPB appeal; and (2) the USMS (through Mr. Band)

having sought out his assistance in connection with its defense of that appeal:

- In October 2007, prior to the issuance of the October 22, 2007 letter and during the course of a regular work day, Mr. Band contacted Federal Defendant Barnes and informed him that Plaintiff had: (1) filed an MSPB appeal against the USMS in which she had identified him as being responsible for the agency action that she was challenging; and (2) requested his deposition in connection with that appeal. (Band Decl. ¶7; Barnes Decl. ¶5.) "[T]o obtain information that [he] believed was necessary to properly defend the agency against [Plaintiff's] MSPB appeal," Mr. Band asked Federal Defendant Barnes to provide him with a description of the nature of his involvement in the challenged agency action. (Band Decl. ¶7; see Barnes Decl. ¶6.)

- Thereafter, and in direct response to his communications with Mr. Band, Federal Defendant Barnes contacted his attorney, Mr. Stein, by telephone from his USMS office and discussed with Mr. Stein: (1) the substance of his communications with Mr. Band; and (2) information concerning Plaintiff and the prior complaints of employment-related misconduct that she had made against him. (Barnes Decl. ¶8.) Federal Defendant Barnes "expected that Mr. Stein would take whatever action he deemed appropriate . . . to ensure that Mr. Band and the rest of the USMS . . . were clear as to [Federal Defendant Barnes's] non-involvement in the matters raised by [Plaintiff] in her MSPB appeal." (Id. at ¶10.) Federal Defendant Barnes "also expected that Mr. Stein would make it clear to the USMS that [Plaintiff's] MSPB appeal was . . . merely the latest of her many non-meritorious complaints of employment-related misconduct involving [him]." (Id.)

- Shortly thereafter, Mr. Stein sent the October 22, 2007 letter to Mr. Band in which, among other things, he: (1) stated that Plaintiff "may have misrepresented facts regarding Mr. Barnes with the MSPB"; (2) confirmed that Federal Defendant Barnes "had nothing to do" with the issues raised by Plaintiff in her MSPB appeal; and (3) described Plaintiff's MSPB appeal as her "latest," unfounded "attempt[] to vilify Mr. Barnes." (Compl. Ex. 1 at 2.) Federal Defendant Barnes reviewed the letter before it was sent. (Barnes Decl. ¶11.) He (reasonably) viewed it as, inter alia, a vehicle through which to "provide Mr. Band with a formal, written, and definitive response to [Mr. Band's] question as to whether [he] had had any involvement in the issues raised by [Plaintiff] in her MSPB appeal" and to "provide the agency with information about [Plaintiff] that would be helpful to it in defending against her MSPB appeal." (Id.)

Because there was a direct and natural relationship between Federal Defendant Barnes's

employment with the USMS (specifically, his role as a witness for purposes of Plaintiff's MSPB

appeal) and his actions in connection with the issuance of the October 22, 2007 letter, Federal

Defendant Barnes was acting within the scope of his employment when he engaged in those actions.[8]  See Doyle-Penne, 2000 WL 1086906, at *2; Plummer, 252 Va. at 237.[9]  As such: (1) the United States is properly substituted as defendant for purposes of Plaintiff's defamation claim against Federal Defendant Barnes; and (2) the defamation claim must be restyled as a claim against the United States arising under the FTCA.[10]  See Rasul, 512 F.3d at 660 ("Because

---

[8] This case is readily distinguishable from those cases where courts applying Virginia law have found that employees were not acting within the scope of their employment.  For example, in Jones v. Tyson Foods, Inc., 378 F. Supp. 2d 705, 714 (E.D. Va. 2004), the court held that a supervisor was not acting within the scope of his employment when he sexually assaulted a subordinate because, at the time of the assault, the supervisor was not engaged in duties or functions incident to his employment.  Similarly, in Blair, 386 F.3d at 627-28, the court held that a janitor who worked at a university was not acting within the scope of his employment when he assaulted a university student because the assault "had nothing to do with [the janitor's] performance of janitorial services."  By contrast, Federal Defendant Barnes's actions in connection with the issuance of the October 22, 2007 letter were a direct and natural consequence of his employment.  Indeed, Federal Defendant Barnes would not have engaged in the challenged conduct but for the fact that:  (1) Plaintiff had identified him as being responsible for the agency action that she was challenging in her MSPB appeal; and (2) the USMS (through Mr. Band) had contacted him (during the course of his regular employment) to obtain from him information that it needed to defend against Plaintiff's MSPB appeal.

[9] As stated above, the Federal Defendants believe that Virginia law governs the scope of the employment inquiry here.  However, even if District of Columbia law were to govern, the conclusion would remain the same—Federal Defendant Barnes was acting within the scope of his employment when he engaged in the challenged conduct.  Under District of Columbia law, the relevant considerations for the scope of the employment inquiry here would be whether Federal Defendant Barnes's actions in connection with the issuance of the October 22, 2007 letter:  (1) were "'incidental to the conduct [he was] authorized'" to perform or "'a direct outgrowth of [his] instructions or job assignment,'" Rasul, 512 F.3d at 655-57 (quoting Restatement (Second) of Agency § 229(1) and Haddon v. United States, 68 F.3d 1420, 1424 (D.C. Cir. 1995)); (2) occurred substantially within the time and space limits of his employment, Council on Am. Islamic Relations, 444 F.3d at 663; and (3) were actuated at least in part by a purpose to serve the USMS, id.  Each of those considerations favors a finding that Federal Defendant Barnes was acting within the scope of his employment when he engaged in the challenged conduct.  Federal Defendant Barnes's actions in connection with the issuance of the October 22, 2007 letter:  (1) were a direct outgrowth of Mr. Band's inquiry into his involvement in issues raised by Plaintiff in her MSPB appeal; (2) occurred substantially while he was at work; and (3) were motivated in part by a desire to aid the USMS in its defense against Plaintiff's MSPB appeal.  (See Barnes Decl. ¶¶8, 10, 11.)

[10] Notably, even assuming, arguendo, that Federal Defendant Barnes was not acting within the scope of his employment when he engaged in the challenged conduct and that

the defendants' alleged conduct came within the scope of their office/employment, the [claims against them] were properly restyled as claims against the United States that are governed by the FTCA." (internal quotation marks and brackets omitted)).

    2.    <u>This Court lacks subject-matter jurisdiction over Plaintiff's restyled defamation claim</u>

Because Plaintiff's defamation claim is properly styled as a claim against the United States arising under the FTCA, it must be dismissed for lack of subject-matter jurisdiction. "The FTCA grants federal district courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment, and waives the government's sovereign immunity from such claims." <u>Sloan v. Dep't of Housing & Urban Development</u>, 236 F.3d 756, 759 (D.C. Cir. 2001) (citing 28 U.S.C. §§ 1346(b), 2674). However, the FTCA's grant of jurisdiction and waiver of sovereign immunity is subject to a number of exceptions. <u>See</u> 28 U.S.C. § 2680. And, "[i]f any one of the exceptions applies, the district court lacks subject matter jurisdiction" over the claim at issue. <u>Greene</u>, 2005 WL 3275897, at *5 (citing 28 U.S.C. § 2680 and <u>Sloan</u>, 236 F.3d at 759).

One exception to the FTCA's grant of jurisdiction and waiver of sovereign immunity is for claims "arising out of . . . libel [or] slander," 28 U.S.C. § 2680(h), which includes claims for defamation, <u>Gardner v. United States</u>, 213 F.3d 735, 737 n.1 (D.C. Cir. 2000); <u>Klugel v. Small</u>, 519 F. Supp. 2d 66, 75 (D.D.C. 2007); <u>Greene</u>, 2005 WL 3275879, at *6. Because the United States (through the FTCA) has not waived its sovereign immunity for claims arising out of

---

Plaintiff's defamation claim is properly brought against him in his individual capacity, the defamation claim against him would still fail. Federal Defendant Barnes's actions in connection with the issuance of the October 22, 2007 letter were done "'preliminary to'" quasi-judicial proceedings, were "'related in some way to'" those proceedings and are thus protected by the "judicial proceedings" privilege. <u>Messina v. Krakower</u>, 439 F.3d 755, 760 (D.C. Cir. 2006); <u>see</u> <u>Marsh v. Hollander</u>, 339 F. Supp. 2d 1, 6-9 (D.D.C. 2004).

defamatory acts, Plaintiff's defamation claim must be dismissed for lack of subject-matter jurisdiction.[11]

## CONCLUSION

For the reasons stated above, this Court should grant the Federal Defendants' Motion to Dismiss and for Summary Judgment as to Plaintiff's Privacy Act and Defamation Claims.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

_____/s/_____
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov

---

[11] Plaintiff's defamation claim must also be dismissed for lack of subject-matter jurisdiction because Plaintiff has failed to allege that she has exhausted her administrative remedies with respect to that claim.  See 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ."); Rasul, 512 F.3d at 661 ("we view the failure to exhaust administrative remedies [under the FTCA] as jurisdictional").

06/28/2007 10:38 FAX 7038821543          WADE&BYRNES                    002/009



**U.S. Department of Justice**

United States Marshals Service

*Human Resources Division*

———————————————————————————

*Washington, DC 20530-1000*

JUN 6 2007

MEMORANDUM TO:     Sheila C. Cloonan
                   Management and Program Analyst
                   Judicial Security Division

FROM:              Suzanne D. Smith   *Suzanne D. Smith*
                   Assistant Director
                    for Human Resources

SUBJECT:           Offer of a Lower Graded Position in Lieu of Reduction in Force

     This notice serves to offer you a lower graded position in lieu of Reduction in Force
(RIF) separation. This action is being taken as part of an ongoing reorganization of Judicial
Security Division resources in which your position is to be abolished. In lieu of RIF separation,
you are offered a Management Analyst, GS-343-12 at the U.S. Marshals Service Training
Academy, Brunswick, GA. This offer is made under the following conditions.

     If you decline this offer, you will be separated through RIF procedures effective
September 29, 2007. RIF procedures will be conducted in accordance with 5 CFR 351 and the
Master Agreement and/or as otherwise negotiated with the International Council.

     If you decline, you will receive a Reduction in Force Separation Notice. Receipt of this
notice entitles you to selection priority for vacancies within the Department of Justice (DOJ)
under the Career Transition Assistance Plan (CTAP). Selection priority extends only to positions
which are at or below your current grade level for positions in the Atlanta local commuting area.
CTAP eligibility ends on the earliest of either the RIF separation date or subsequent Federal
employment in another career, career conditional or excepted appointment without a time limit,
in any agency. Upon separation, you are entitled to selection priority in other agencies in the
Atlanta local commuting area through Interagency Career Transition Assistance Plan (ICTAP)
coverage. ICTAP eligibility ends one year after separation or upon a career-conditional, career
or excepted appointment with no time limit. CTAP and ICTAP regulations are set out in 5 CFR
330 Subparts F and G (http://www.access.gpo.gov/nara/cfr/waisidx_06/5cfr330_06.html).
Information on CTAP and ICTAP is available at http://www.usajobs.opm.gov/EI32.asp.

*2 positions*
*12 - 5/7*
*12 - 12/4*

GOVERNMENT
EXHIBIT

1

In addition to CTAP and ICTAP, you may register on the DOJ Reemployment Priority List (RPL). Under the RPL, you are eligible for priority consideration over outside applicants for positions filled within DOJ in the Atlanta local commuting area, at or below your current grade. Your eligibility period is 2 years from the date of registration. DOJ information on RPL is available at http://www.usdoj.gov/jmd/ps/rpl.htm. The RPL regulations are set out in 5 CFR 330 Subpart B and are available at http://www.access.gpo.gov/nara/cfr/waisidx_06/5cfr330_06.html.

Further, because RIF separation is involuntary, if you decline the offer of a lower graded position and receive a Reduction in Force Separation Notice, you are eligible for Discontinued Service Retirement.

If you accept this offer, the effective date for the change to lower grade will be September 2, 2007 and your reporting date will be September 3, 2007. You will retain the grade of the position from which you will be demoted for a 2-year period beginning on the effective date of your assignment to the position. You will also be entitled to the rate of pay for your retained grade and to within-grade increases and quality increases, if you are otherwise eligible, and to general pay increases in your retained grade. Your retained grade will be used in determining your retirement and insurance benefits during the 2-year period.

Upon expiration of your 2-year grade retention period, your entitlement to pay retention will be determined as follows. If, at that time, the maximum rate of the grade to which you are demoted exceeds your retained grade rate of pay, you will not be entitled to pay retention. In such case, your pay in the lower grade will be set at the lowest rate of basic pay which is equal to or exceeds your current rate of pay at the end of the 2-year grade retention period. If your rate of pay in your retained grade, at the time your grade retention ends, exceeds the maximum rate of the grade to which you are demoted, you will be entitled to the lesser of the following:

      (1) Your allowable rate of pay in your retained grade; or

      (2) 150 percent of the maximum rate of the grade to which you are demoted. Annual increases will be half of the General Schedule increase until such time as your rate of pay is within the GS-12 rate range. If at any time you are made and decline a reasonable offer of a GS-13 position, you will lose your entitlement to grade and pay retention.

For competitive purposes, your time-in-grade at the GS-13 enables you to compete for positions GS-14 and above. Upon expiration of your 2-year grade retention period, you will continue to be eligible to compete for such positions. In addition, you remain eligible for non-competitive repromotion to any GS-13 position for which you qualify.

This relocation is advantageous to the government and expenses will be paid in accordance with U.S. Marshals Service policy and the Federal Travel Regulations (FTR), Chapter 302 – Relocation Allowances. This notice does not authorize expenditure of funds. If the position is accepted, a separate funding authorization will be issued.

06/28/2007 10:39 FAX  7036831543        WADE&BYRNES                    ☑004/009

Please fax your acceptance or declination of this offer to Debbie Harlow at (202) 307-9455 by June 25, 2007. Failure to reply will constitute a declination and result in commencement of separation procedures. Please mail a copy of this memo with your original signature to the following address: U.S. Marshals Service, Debbie Harlow, America's Star Corporation, PO Box 2326, Arlington, VA 22202. If you have any questions concerning this action, please call Katherine Mohan at (202) 307-9414.

## ACKNOWLEDGMENT

_____ I accept the position of Management Analyst, GS-343-12 at the U.S. Marshals Service Training Academy, Brunswick, GA under the conditions outlined above.

_____ I decline the position of Management Analyst, GS-343-12 at the U.S. Marshals Service Training Academy, Brunswick, GA and acknowledge that this declination will result in commencement of separation procedures.

_____            _____
Sheila C. Cloonan                            Date  6/19/07

Attachment

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

―――――――――――――――――――――――――――――
|                                              | )  |
| SHEILA CLOONAN,                              | )  |
|                                              | )  |
|         Plaintiff,                           | )  |
|                                              | )  |
|         v.                                   | )  | Civil Action 08-0700 (HHK)
|                                              | )  |
| MICHAEL B. MUKASEY, <u>et al.</u>,           | )  |
|                                              | )  |
|         Defendants.                          | )  |
―――――――――――――――――――――――――――――)

## <u>SCOPE OF EMPLOYMENT CERTIFICATION</u>

I, Rudolph Contreras, Chief of the Civil Division of the United States Attorney's Office

for the District of Columbia, acting pursuant to 28 U.S.C. § 2679(d), and by virtue of the

authority delegated to the United States Attorney by 28 C.F.R. § 15.4, and first redelegated to me

on March 20, 2006, hereby certify that I have read the Complaint in the above-captioned matter,

and that based on the information now available to me, I find that Defendant David Barnes was

acting within the scope of his employment as an employee of the United States Marshals Service

when he engaged in the conduct that gave rise to Plaintiff's claim for defamation against him.

Dated:  July 2, 2008                          Respectfully submitted,


                                    _____/s/_____
                                    RUDOLPH CONTRERAS, D.C. BAR #434122
                                    Assistant United States Attorney
                                    Chief, Civil Division


**EX. 2**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHEILA CLOONAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 1:08-cv-00700-HHK. |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL MUKASEY | ) | |
| ATTORNEY GENERAL, et. al, | ) | |
| | ) | |
| Defendants | ) | |

## DECLARATION

**I, JOSEPH BAND, hereby declare the following to be true and correct**:

1. I am an Associate General Counsel, United States Marshals Service (USMS), Office of General Counsel, in Arlington, Virginia. I have been employed with the USMS since 1986.

2. I have read the Complaint filed by Sheila Cloonan in April 2008 in the United States District Court for the District of Columbia, Civil Action Number 1:08-cv-00700-HHK.

3. On or about September 13, 2007, the USMS, Office of General Counsel, received Ms. Cloonan's Merit Systems Protection Board (MSPB) appeal, in which she challenged the elimination of her GS-13 level position in Atlanta, Georgia and her subsequent reassignment to a GS-12 level position in Glynco, Georgia.

4. By the end of September 2007, I had been assigned to defend the USMS against Ms. Cloonan's MSPB appeal.

5. In her MSPB appeal, Ms. Cloonan identified her former second-level supervisor, Mr. David Barnes, Chief, Office of Management and Administration, Judicial Security Division, USMS, as responsible for the agency action she was challenging in her MSPB appeal.

6. Some time in October 2007, Mr. Kevin Byrnes, Ms. Cloonan's representative for her MSPB appeal, commenced discovery and contacted me to request Mr. Barnes's deposition.

7. I then contacted Mr. Barnes during the course of a regular work day and informed him (orally) that: (1) Ms. Cloonan had filed an MSPB appeal challenging the elimination of her GS-13 level position in Atlanta, Georgia and her subsequent reassignment to a GS-12 level position in Glynco, Georgia; (2) Ms. Cloonan had identified him as the agency official responsible for the challenged agency action; and (3) Ms. Cloonan's counsel was seeking to take his deposition in connection with the MSPB appeal. In addition, to obtain information that I believed was necessary to properly defend the agency against Ms. Cloonan's MSPB appeal, I asked Mr. Barnes to describe to me the nature of his involvement in the challenged agency action. Mr. Barnes responded orally by telling me that he had had no involvement in either the decision to eliminate Ms. Cloonan's GS-13 level position in Atlanta, Georgia, or the decision to offer her reassignment to a GS-12 level position in Glynco, Georgia.

8. During my communications with Mr. Barnes, I provided him with an oral summary of the allegations raised by Ms. Cloonan in her MSPB appeal so that I could

determine the nature of his involvement with respect to those issues. I did not provide Mr. Barnes with any agency records relating to Ms. Cloonan; nor did I discuss with Mr. Barnes information about Ms. Cloonan that I had retrieved from agency records.

9. In October 2007, I received a letter dated October 22, 2007 that was addressed to me and was written by Mr. Stein. I had no involvement in the drafting of that letter, which is attached to Ms. Cloonan's Complaint in this matter as Exhibit 1. Nor did I have any knowledge that it was being drafted. Among other things, the letter provided a formal, written response to my prior question to Mr. Barnes regarding the nature of his involvement in the agency action that Ms. Cloonan was challenging in her MSPB appeal.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

**JOSEPH BAND**
Associate General Counsel
United States Marshals Service
CS-3, 12th Floor
Washington D.C. 20530-1000

Executed on: July 2, 2008

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHEILA CLOONAN, | ) | |
| | ) | |
| Plaintiff | ) | No. 1:08-cv-00700-HHK. |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL MUKASEY | ) | |
| ATTORNEY GENERAL, et. al, | ) | |
| | ) | |
| Defendants | ) | |

## DECLARATION

I, DAVE BARNES, declare the following to be true and correct:

1. I am presently the Chief, Office of Management and Administration, Judicial Security Division, United States Marshals Service (USMS), Department of Justice, Arlington, Virginia. I have been employed with the USMS since July 1990, and have held my current position since October 2006.

2. Prior to October 2006, I held the position of Chief, Central Courthouse Management Group (CCMG), USMS, in Arlington, Virginia. From 1990 to the present, I have been duty-stationed in the USMS's headquarters office in Arlington, Virginia.

3. I have read the Complaint filed by Sheila Cloonan in April 2008 in the United States District Court for the District of Columbia, Civil Action Number 1:08-cv-00700-HHK.

4. Beginning in approximately 2000 and continuing through (as I understand it) June 2007, Ms. Cloonan held a GS-13 level position with the USMS and was duty-

stationed in Atlanta, Georgia. During that time, Ms. Cloonan reported to, and was supervised by, officials in the USMS's headquarters office in Arlington, Virginia. As Chief, CCMG, I was Ms. Cloonan's second-level supervisor from approximately 2000 to October 2006. During that time, she filed numerous formal complaints of employment-related misconduct against me.

5. In October 2007, Joseph Band, USMS, Office of General Counsel, contacted me during the course of a regular work day and informed me that: (1) Ms. Cloonan had filed an appeal with the Merit Systems Protection Board (MSPB) challenging the elimination of her GS-13 level position in Atlanta, Georgia and her subsequent reassignment to a GS-12 level position in Glynco, Georgia; (2) Ms. Cloonan had identified me as the agency official responsible for the challenged agency action; and (3) Ms. Cloonan's counsel was seeking to take my deposition in connection with the MSPB appeal.

6. Mr. Band also informed me that he represented the USMS in the MSPB appeal and he asked me to describe to him the nature of my involvement in the actions that Ms. Cloonan was challenging in her MSPB appeal. I told Mr. Band that I had had no involvement with respect to either the decision to eliminate Ms. Cloonan's GS-13 level position in Atlanta, Georgia, or the decision to offer her reassignment to a GS-12 level position in Glynco, Georgia.

7. During my communications with Mr. Band, Mr. Band provided me with only an oral summary of the allegations raised by Ms. Cloonan in her MSPB appeal and nothing else. Mr. Band did not provide me with any documents relating to Ms. Cloonan.

2

Nor did he discuss with me any information relating to Ms. Cloonan besides the allegations she had raised in her MSPB appeal.

8. After my above-mentioned communications with Mr. Band (and also during the course of my regular work day), I contacted my then-attorney, Paul Stein, by telephone from my USMS office and discussed with him the substance of my communications with Mr. Band, complaints of employment-related misconduct that Ms. Cloonan had previously filed against me and information I had learned about Ms. Cloonan from my own prior experiences with her and from colleagues who had interacted with her and had shared their experiences with me.[1]

9. None of the information that I discussed with Mr. Stein was obtained by me from agency records. Indeed, I do not believe that I even had access to agency records from which I could have acquired information about Ms. Cloonan.

10. I expected that Mr. Stein would take whatever action he deemed appropriate as my representative to ensure that Mr. Band and the rest of the USMS (and any other relevant parties) were clear as to my non-involvement in the matters raised by Ms. Cloonan in her MSPB appeal. I also expected that Mr. Stein would make it clear to the USMS that Ms. Cloonan's MSPB appeal was unavailing—it was merely the latest of her many non-meritorious complaints of employment-related misconduct involving me.

---

[1] Among the colleagues of mine who have shared their experiences regarding Plaintiff with me are: (1) Joseph Buonocore, former Assistant Chief, Office of Courthouse Management, USMS; (2) Brian Fields, Deputy Chief, Office of Management and Administration, USMS; (3) Jim Griffis, Program Manager, Management and Budget Division, USMS; (4) Norman Hylton, Assistant Chief Deputy, USMS, Northern District of Georgia; (5) William Mayles, Chief, Office of Courthouse Management, USMS; (6) James McGregor, Chief Deputy, USMS, Northern District of Georgia; and (7) Edward Stubs, former USMS Marshal and Chief.

Following my communications with Mr. Stein, Mr. Stein sent the October 22, 2007 letter to Mr. Band, which is attached to the Complaint in this action as Exhibit 1.

11.  I reviewed the October 22, 2007 letter prior to its issuance. I viewed the letter as being intended to do a number of things, including (1) provide Mr. Band with a formal, written, and definitive response to his question as to whether I had had any involvement in the issues raised by Ms. Cloonan in her MSPB appeal, (2) provide the agency with information about Ms. Cloonan that would be helpful to it in defending against her MSPB appeal, and (3) make clear to the agency that Ms. Cloonan's various complaints against me were entirely unfounded. Each of the statements in the October 22, 2007 letter about Ms. Cloonan reflects information that I obtained from my own personal experiences with Ms. Cloonan or from colleagues who had interacted with her and had shared information about her with me:

- For example, the letter states that "it is documented in writing that Ms. Cloonan entered an elevator in the Atlanta Federal Building and Courthouse and started talking to staff that her boss was going to jail, naming Mr. Barnes." This statement was based on information contained in an email that was sent to me by Norman Hylton, the Assistant Chief Deputy U.S. Marshal for the Northern District of Georgia, in June 2006. (See Ex. A.)

- The letter also states that "it appears from the record that Cloonan could not even get along with staff in the Atlanta USMS office that she did not work for. She had multiple concerns and complaints filed by operational District staff in Atlanta against her for constant, documented, as they said 'unstable fits of rage.' They documented Cloonan's behavior in writing when it happened using this exact language. Multiple managers will evidently confirm her disruptions . . . ." These statements were based on information that was reported to me by USMS staff stationed in Atlanta, Georgia. For instance, in an email sent to me in July 2006, Mr. Hylton stated that: (1) Ms. Cloonan "typical[ly causes] . . . disturbance[s] . . . over unfounded issues"; (2) he is "already tying up much of [his] time answering a frivolous complaint that [Ms. Cloonan] filed" against a USMS employee; and (3) [c]onsidering [Ms. Cloonan's] unstable fits of rage[,] I would just ask that you consider the damage that she is causing to our District and assist us if you can." (Ex B.)

4

- Finally, the letter states that: (1) "Ms. Cloonan has evidently been involved in an orchestrated campaign with other staff to repeatedly file unfounded, false, allegations against Mr. Barnes"; (2) "Ms. Cloonan has not prevailed in any complaints that she has filed against Mr. Barnes in the past few years"; (3) "Ms. Cloonan has been involved in filing multiple, false complaints for the past several years with various entities . . . and Mr. Barnes' supervisors"; (4) "[i]t appears that Ms. Cloonan's latest attempt[] to vilify Mr. Barnes now lays at the doorstep of the [MSPB]"; and (5) "[t]he overall USMS employment record for Ms. Cloonan will evidently depict an employee that has been very disruptive to government operations for years." These statements were based on my own personal experiences as: (1) Ms. Cloonan's second-level supervisor; and (2) the primary focus of her numerous formal complaints of employment-related misconduct.

12. To the best of my knowledge, neither Mr. Band nor any other lawyer in the USMS Office of General Counsel provided information about Ms. Cloonan to Mr. Stein or was involved in the issuance of the October 22, 2007 letter.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

**DAVE BARNES**, Chief
Office of Management and Administration
Judicial Security Division
United States Marshals Service
CS-3, 6th Floor
Washington D.C. 20530-1000

Executed on: July 2, 2008

5

Norman Hylton
Assistant Chief Deputy
United States Marshal
Atlanta GA
404-331-2740

-----Original Message-----
**From:** Barnes, Dave (USMS)
**Sent:** Tuesday, June 27, 2006 2:44 PM
**To:** Hylton, Norm (USMS)
**Subject:** RE: YOUR EYES ONLY

I would like that. Would the employee send me an E-mail with the date, time and specifics of what Cloonan said about me?? Thanks a lot. This kind of gossip really hurts staff.

> -----Original Message-----
> **From:** Hylton, Norm (USMS)
> **Sent:** Tuesday, June 27, 2006 2:41 PM
> **To:** Barnes, Dave (USMS)
> **Subject:** YOUR EYES ONLY
>
> **I thought you should know that the individual in question was on an elevator today in the Federal Bldg. with two unknown individuals and one of our admin. Employees. She began talking out loud to the individuals on the elevator that Dave Barns was going to jail for stealing money and misusing Government funds...... I can't make this stuff up that is what happened and the employee can give you a statement relating the facts, but I wanted to check with you first.**
>
> No cc to anyone
>
> Norman Hylton
> Assistant Chief Deputy
> United States Marshal
> Atlanta GA
> 404-331-2740


GOVERNMENT
EXHIBIT
A

**Barnes, Dave (USMS)**
**From:**      Barnes, Dave (USMS)
**Sent:**      Friday, July 14, 2006 8:40 AM
**To:**        Barnes, Dave (USMS)
**Subject:**   FW: Sheila Cloonan Disruption and Unstable Fits of Rage

-----Original Message-----
**From:** Hylton, Norm (USMS)
**Sent:** Wednesday, July 12, 2006 4:39 PM
**To:** Nelson, John (USMS)
**Cc:** Mayles, William (USMS); Buonocore, Joe (USMS); Mecum , Richard (USMS); McGregor, James (USMS)
**Subject:** FW: file cabinets

John I know you are on travel so I am sending this to Bill and Joe in case you are unable to process our request.

I am attaching a copy of an e mail sent this morning to the Marshal from Sheila Cloonan, this is typical of the disturbance that she is known for causing over unfounded issues. We as a District have worked very hard over the past months to move our selves at a savings to the Agency and into limited space. We can not afford to subject our employees to the continued badgering from one employee just because the individual feels that they should be treated differently than the rest of us. I am already tying up much of my time answering a frivolous complaint that this individual filed against one of our own.

We are already stressed out trying to make the daily operations safe and keep moral up with our employees and would really appreciate any assistance you can give in expediting the movement of this individual from the 11th floor to the 2nd floor. I received a copy of the 81 for the space on the 2nd floor and thank you for moving forward on this matter. Please let us know what we can do to assist in any way to expedite the build out of this new space on two.

I know that Chief McGregor spoke to Joe this morning about her need to communicate with him rather than the District Marshal. Considering her unstable fits of rage I would just ask that you consider the damage that she is causing to our District and assist us if you can.

**Norman Hylton**
**Assistant Chief Deputy**
**United States Marshal**
**Atlanta GA**
**404-331-2740**



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

SHEILA CLOONAN,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )        Civil Action 08-0700 (HHK)
                                         )
MICHAEL B. MUKASEY, et al.,              )
                                         )
            Defendants.                  )
_____ )

## THE FEDERAL DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to Local Civil Rule 7(h), Michael B. Mukasey, Jeffrey A. Taylor, John F. Clark and David Barnes (collectively, the "Federal Defendants") respectfully submit this Statement of Material Facts Not in Genuine Dispute.

1.      At all times relevant to this action, Plaintiff Sheila Cloonan was an employee of the United States Marshals Service ("USMS").  (Compl. ¶7.)  Beginning in 2000 and continuing through June 2007, Plaintiff held a GS-13 level position with the USMS and was duty-stationed in Atlanta, Georgia.  (Barnes Decl. ¶4.)[1]

2.      From 2000 through October 2006, Plaintiff's second-level supervisor was Federal Defendant Barnes.  (Id.)  Since 1990, Federal Defendant Barnes has been duty-stationed in the USMS's headquarters office in Arlington, Virginia.  (Id. at ¶2.)

3.      In June 2007, Plaintiff received notice that as of September 2007:  (1) her GS-13 level position would be eliminated due to a reorganization of USMS resources; and (2) she

_____

[1] Citations in the form "(Barnes Decl. ¶__)" refer to the declaration of David Barnes, which is being submitted by the Federal Defendants herewith.

would be separated from the USMS pursuant to Reduction-in-Force procedures.  (See Ex. 1.)[2]
However, as an alternative to a Reduction-in-Force separation from the USMS, Plaintiff was
offered a GS-12 level position with the USMS in Glynco, Georgia beginning in September 2007
(the "June 2007 offer").  (Id.)  Plaintiff accepted the June 2007 offer.  (See Compl. ¶18.)

    4.      In August 2007, Plaintiff filed an administrative appeal with the Merit Systems
Protection Board ("MSPB") against the USMS challenging the elimination of her GS-13 level
position in Atlanta, Georgia and her reassignment to a GS-12 level position in Glynco, Georgia.
(Compl. ¶28.)  In her MSPB appeal, Plaintiff identified Federal Defendant Barnes as being
responsible for the challenged agency action.  (Band Decl. ¶5; see Compl. ¶29.)[3]

    5.      By the end of September 2007, Joseph Band, an attorney in the USMS's Office of
General Counsel, had been assigned to defend the USMS against Plaintiff's MSPB appeal.
(Band Decl. ¶¶1, 4.)

    6.      In October 2007, Plaintiff's legal representative, Kevin Byrnes, contacted
Mr. Band and informed him that Plaintiff wished to depose Federal Defendant Barnes in
connection with her MSPB appeal.  (Id. at ¶6.)

    7.      Mr. Band, in turn, contacted Federal Defendant Barnes and informed him that:
(1) Plaintiff had filed an MSPB appeal challenging the USMS's elimination of her GS-13 level
position in Atlanta, Georgia and her reassignment to a GS-12 level position in Glynco, Georgia;
(2) Plaintiff had identified him as being responsible for the challenged agency action; and
(3) Plaintiff's counsel was seeking to take his deposition in connection with the MSPB appeal.
(Id. at ¶7; Barnes Decl. ¶5.)  In addition, Mr. Band asked Federal Defendant Barnes to provide

---

[2] Citations in the form "(Ex. ___)" refer to exhibits that are being submitted by the Federal
Defendants herewith.
    [3] Citations in the form "(Band Decl. ¶___)" refer to the declaration of Joseph Band, which
is being submitted by the Federal Defendants herewith.

him with a description of the nature of his involvement in the decision to eliminate Plaintiff's GS-13 level position in Atlanta, Georgia and to offer her a reassignment to a GS-12 level position in Glynco, Georgia. (Band Decl. ¶7; <u>see</u> Barnes Decl. ¶6.)

8.      While communicating with Federal Defendant Barnes, Mr. Band did not disclose to Federal Defendant Barnes any agency records relating to Plaintiff. (Band Decl. ¶8; Barnes Decl. ¶7.) Nor did he discuss with Federal Defendant Barnes information about Plaintiff that he had retrieved from agency records. (Band Decl. ¶8.)

9.      Following his communications with Mr. Band, Federal Defendant Barnes contacted his attorney, Paul T. Stein, by telephone from his USMS office and discussed with Mr. Stein the substance of his communications with Mr. Band and information concerning Plaintiff and the prior complaints of employment-related misconduct that she had made against him. (Barnes Decl. ¶8.)

10.     None of the information that Federal Defendant Barnes discussed with Mr. Stein pertaining to Plaintiff was obtained from agency records. (<u>Id.</u> at ¶9.)

11.     Mr. Stein then drafted and sent out the October 22, 2007 letter, which was addressed to Mr. Band. (<u>See</u> Compl. Ex. 1 at 1.)

12.     Each of the statements in the October 22, 2007 letter about Plaintiff reflects information that Federal Defendant Barnes obtained from his own personal experiences with Plaintiff or from colleagues who had interacted with Plaintiff and had shared information about her with him. (Barnes Decl. ¶11; <u>see</u> <u>id.</u> at ¶9 & Exs. A, B.)

13.     Rudolph Contreras, the Chief of the Civil Division of the United States Attorney's Office for the District of Columbia, has certified that Federal Defendant Barnes's actions in

connection with the issuance of the October 22, 2007 letter were within the scope of his

employment.  (See Ex. 2.)

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                                    )
SHEILA CLOONAN,                                     )
                                                    )
             Plaintiff,                             )
                                                    )
             v.                                     )        Civil Action 08-0700 (HHK)
                                                    )
MICHAEL B. MUKASEY, et al.,                         )
                                                    )
             Defendants.                            )
———————————————————————)

## ORDER

        Having considered the Federal Defendants' Motion to Dismiss and for Summary

Judgment, and the entire record herein, it is this _____ day of _____,

2008, hereby:

        ORDERED that the Federal Defendants' Motion to Dismiss and for Summary Judgment

be and hereby is GRANTED.

        SO ORDERED.


                                    _____
                                    UNITED STATES DISTRICT JUDGE


Copy to:  ECF Counsel