**U.S. DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHEILA CLOONAN                )<br>                                              )<br>         Plaintiff,                     )<br>                                              )<br>v.                                          )   Civil Action No. 1:08-cv-0700 (HHK)<br>                                              )<br>MICHAEL B. MUKASEY, et al.  )<br>                                              )<br>         Defendants.                 )<br>_____ ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT PAUL T. STEIN'S MOTION TO DISMISS**

Plaintiff Sheila Cloonan, by counsel, hereby files her Memorandum in Opposition to Defendant Paul T. Stein's Motion to Dismiss and for grounds states as follows:

### INTRODUCTION

This is an action by the Plaintiff Sheila Cloonan for violation of the Privacy Act against the U.S. Marshals Service (and certain pro forma named individuals) and for defamation against one of those individuals, David Barnes, and his former attorney, Paul T. Stein, Esq. Mr. Stein has filed a motion to dismiss the defamation count against him on the basis that his defamatory publication was allegedly privileged. By this Memorandum, Plaintiff asks this Court to deny Mr. Stein's motion to dismiss the defamation count.

### FACTS

1.  As alleged in the instant Complaint, Plaintiff Sheila Cloonan is a long term employee of the U.S. Marshals Service who was transferred and downgraded from a GS-13 position to a GS-12 position in June 2007, after filing various complaints with the Equal Employment Opportunity ("EEO") Office, the Department of Labor, and the Office of the

1

Special Counsel concerning the discriminatory and illegal actions of her second-tier supervisor, David Barnes. Ms. Cloonan also filed an administrative appeal with the Merit Systems Protection Board ("MSPB") contesting her downgrading from a GS-13 to a GS-12 position.

2.	On October 22, 2007, Defendant Paul T. Stein, Esq., apparently Mr. Barnes' then counsel, sent an unsolicited letter to Joseph M. Band, Esq., counsel for the U.S. Marshals Service who was representing the Marshals Service in the case of Sheila Cloonan vs. U.S. Department of Justice, the MPSB administrative appeal referenced above. (A copy of Mr. Stein's letter of October 22, 2007 is attached as Exhibit 1 to the Complaint and is also attached as Exhibit 1 herein.)

3.	The ostensible purpose of Mr. Stein's letter to Mr. Band was to inform the Marshals Service counsel that Mr. Stein's then client, David Barnes, "is represented by Jacob A. Stein of the Law Offices of Stein, Mitchell and Mezines in Washington, D.C.," and that "any requests for interviews or depositions for any case or action must be coordinated through Mr. [Jacob] Stein." (Exhibit 1, first paragraph)

4.	However, the actual purpose of Mr. Stein's letter to Mr. Band is found in the remaining three pages of the letter which excoriate Ms. Cloonan with the following incendiary accusations:

	a.	Ms. Cloonan had engaged in "criminal, dishonest, infamous or notoriously disgraceful conduct" in her actions regarding Mr. Barnes;

	b.	Ms. Cloonan was guilty of "falsification, misstatement, exaggeration or concealment of material fact" during her employment with the Marshals Service.

	c.	Ms. Cloonan was guilty of "disorderly conduct, fighting, threatening or attempting to inflict bodily injury" on Mr. Barnes;

2

  d. Ms. Cloonan had "literally stalked" Mr. Barnes by filing "multiple false complaints and overt threats;"

  e. Ms. Cloonan "intended to damage Mr. Barnes' career, promotion opportunities, and reputation;"

  f. Ms. Cloonan had "targeted, harassed, and made false statements" against Mr. Barnes;

  g. Ms. Cloonan had attempted to "blackmail" Mr. Barnes and others;

  h. Ms. Cloonan intended "to vilify Mr. Barnes" with the MSPB in order to "obfuscate the facts;" and

  i. Ms. Cloonan was part of "an orchestrated campaign with other staff" to repeatedly file "unfounded, false allegations" against Mr. Barnes;

  5. It is important to point out that these unsolicited assaults on Ms. Cloonan's character, integrity, and job performance were not requested from or directed to any court or administrative tribunal. Nor were they contained in any pleading or affidavit filed in such a proceeding. Rather, they were gratuitously sent to counsel for a government agency (the U.S. Marshals Service) involved in an administrative proceeding filed by Ms. Cloonan, to which Mr. Barnes, Mr. Stein's client, was not a party.

  6. Even worse, unsolicited copies of Mr. Stein's scathing letter of October 22, 2007 attacking Ms. Cloonan were deliberately scattered throughout at the highest levels of the federal government offices in Washington, D.C., and to other locations in the country with the obvious intent of destroying Ms. Cloonan's reputation and standing with her employer and poisoning her administrative claims and appeals. Thus, copies were sent by Mr. Stein to: (1) Scott J. Bloch, the Director of the U.S. Office of Special Counsel, the agency that had formerly been involved in

3

investigating her claims of whistleblower retaliation; (2) John F. Clark, the Director of the U.S. Marshals Service, the employer of Ms. Cloonan; (3) Anthony W. Cummings, an MSPB administrative law judge in Atlanta, Georgia; (4) Joann Grady, the chief EEO Officer for the U.S. Marshals Service; and (5) counsel for both Ms. Cloonan and Mr. Barnes. (There is no known tally of how many dozens of agency officials and staff have read Mr. Stein's letter to date.)

7.  There is no evidence or allegation that Mr. Bloch, the Director of the Office of Special Counsel, Mr. Clark, the Director of the U.S. Marshals Service, or Ms. Grady, the chief EEO Officer for the Marshals Service, had any involvement whatsoever in any of Ms. Cloonan's complaints or administrative proceedings or had even requested any information about Ms. Cloonan. Furthermore, at the time of Mr. Stein's letter, the U.S. Office of Special Counsel had already completed its review of Ms. Cloonan's whistleblower retaliation claim and had closed its file on the complaint (see Exhibit 2 herein). As a result, there was no active investigation or administrative proceeding involving Ms. Cloonan within the Office of Special Counsel on October 22, 2007, the date of Mr. Stein's defamatory letter to the Director of that agency.

## SUMMARY OF ARGUMENT

The Plaintiff asks this Court to decline Mr. Stein's invitation to grant him a license to intentionally trash the reputation of a government employee within her own agency and within other government investigatory agencies that are tasked to assist her in her claims of discrimination. There is no privilege under applicable law for an attorney to publish such a defamatory letter without any of the protections or safeguards of a judicial or a quasi-judicial proceeding in place. And there is no privilege recognized in the law for such a letter to be sent to individuals who are not witnesses or parties in any such proceedings or to agencies with no

4

proceedings pending or anticipated. For these reasons, Plaintiff asks this Court to deny Mr. Stein's Motion to Dismiss.

## APPLICABLE LAW

### A. Rule 12 (b) (6) Standard

Under Rule 12 (b) (6) of the Federal Rules of Civil Procedure, the Court is required to "accept the allegations of the Complaint as true, draw all inferences in the Plaintiff's favor and [dismiss] only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Broudy v. Mather, 460 F. 3d 106, 116 (D.C. Cir 2006). Thus, this Court need only find "any set of facts… consistent with the allegations" of the instant Complaint and find that relief could be granted by those facts to deny the Motion to Dismiss under Rule 12 (b) (6).

### B. Privacy Act

Mr. Stein contends that, as a private citizen, he is not subject to Privacy Act claims. Plaintiff agrees and has not asserted any such claim against Mr. Stein.

### C. Defamation

Defendant Stein does not contest that the letter is defamatory. Rather, he contends that his publication of the letter of October 22, 2007 is privileged, and he relies primarily on the law of the District of Columbia where the letter was addressed to support that privilege. Mr. Stein asserts that the letter is absolutely privileged or, alternatively, that it has the protection of a qualified privilege. Thus, the law of privilege is key to resolving this motion. Plaintiff believes that either the law of Maryland (where the letter originated) or the law of the District of Columbia (where the letter was addressed) applies to this defamation count. The privilege

standards of both jurisdictions appear quite similar. Under either standard, the letter should not be afforded the protection of a privileged communication.

## ARGUMENT

### A. Mr. Stein's Letter is Not Protected by Absolute Privilege

Defendant Stein asserts that his letter of October 22, 2007 is protected by an absolute privilege, because it was allegedly "sent to people involved in administrative proceedings filed by Ms. Cloonan" (Def. Mem., p. 6). The Defendant cites Conservative Club of Washington v. Finkelstein, 738 F. Supp 6 (D.D.C. 1990) and the Restatement (Second) of Torts § 586 (1977) as support. However, neither of these authorities nor any of the others cited by the Defendant supports his request for an absolute privilege in this case.

As referenced in Conservative Club of Washington, the Restatement (Second) of Torts contains the following Section:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel if it has some relation to the proceeding.

The Court then applied this Section to allow a privilege to the pre-litigation statement of the attorney at issue with the following caveat:

> As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

In the instant case, Mr. Stein's letter was sent to a number of people who had no involvement whatsoever with "a proposed judicial proceeding" or "the institution of" a proceeding or "during the course" of a proceeding or "as part of" a proceeding. Most glaringly,

6

the investigation of Ms. Cloonan's whistleblower retaliation claim by the Office of Special Counsel had already concluded when Mr. Stein sent the letter. As a result, there was no "proceeding" at all that the Director of that agency or his staff were involved in. Similarly, there is no evidence or allegation that the Director of the Marshals Service or the Chief EEO Officer of the Marshals Service had any involvement or interest in any administrative proceeding that Ms. Cloonan was a party to. Furthermore, Defendant Stein did not "participate as counsel" in any such proceeding. Therefore, neither the Restatement nor Conservative Club of Washington provides support for his claim of privilege. In fact, the law specifically refuses to allow a privilege for a defamatory statement made to persons without such an interest. See Messina v. Krakower, 439 F. 3d 755, 761, 370 U.S. App. D.C. 134 (D.C. Cir. 2006) "[A]s a corollary of the relatedness requirements, the privilege has been 'held to be inapplicable to persons not having an interest [in] or connection to the litigation.' " citing Finkelstein, Thompson & Loughran v. Hemispherex Biopharma, 774 A. 2d 205, 332 (D.C. 2001).

Most importantly, although the scope of the absolute privilege has been extended under both Maryland law and District of Columbia law to administrative agencies, the extension of the privilege has been subject to strict safeguards. The leading Maryland case is Offen v. Brenner, 402 Md. 191, 935 A. 2d 719 (2007). In recounting the development of the applicability of the absolute privilege to administrative proceedings, the Maryland Court of Appeals recited the standard as follows:

> We have decided that whether absolute witness immunity will be extended to any administrative proceeding will have to be decided on a case-by-case basis and will in large part turn on two factors: (1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements.

7

Offen, supra, quoting from Gersh v. Ambrose, 291 Md. 188, 434 A. 2d 547 (1981). (Court declined to apply the doctrine of absolute privilege because the procedural safeguards were inadequate and the public interest involved was less compelling than the possible damage to individual reputations caused by defamation.). See also Imperial v. Drapeau, 351 Md. 38, 48, 716 A. 2d 244, 249 (1998):

> [A]bsolute witness immunity will not be extended to nonjudicial proceedings unless the same policy considerations which underlie application of the privilege in the judicial sphere are also present. It must appear from the *nature and conduct* of the proceeding that society's benefit from unfettered speech during the proceeding is greater than the interests of an individual who might be defamed during that proceeding. [Italics in original.]

Similarly, the law of the District of Columbia has also extended the absolute privilege to quasi-judicial proceedings and administrative agencies. Mazanderan v. McGranery, 490 A. 2d 180 (D.C. 1984) (Public Vehicles Bureau of D.C. Department of Transportation); Sturdivant v. Seaboard Service System, 459 A. 2d 1058 (D.C. 1983) (arbitration proceedings); Arneja v. Gildar, 541 A. 2d 621 (1988) (Rental Accommodations Office). However, as with the Maryland courts, the District of Columbia courts are very careful to insure that strict procedural safeguards are required in such proceedings before they will extend the privilege.

In Arneja, the District of Columbia Court of Appeals affirmed the ruling of the lower court that an absolute privilege applied to a defamatory statement made by an attorney in a landlord-tenant dispute in the District of Columbia Rental Accommodations office. Attorneys for both parties and their clients were present in a hearing room awaiting the arrival of the hearing examiner to adjudicate the case, when one attorney allegedly told the other that he should not have taken the case, he did not understand the law, and needed to go back to elementary school and learn English (the defamed attorney had been born in India). The trial

court granted summary judgment, holding that the defamatory words were sufficiently related to the proceeding to allow the privilege.

The Court of Appeals affirmed with the following cautionary guidelines:

> Given that the parties were involved in litigation, present in a hearing room, and awaiting commencement of the proceeding to adjudicate their dispute, we believe the trial court did not err in concluding the statements were made preliminary to a judicial proceeding.[FN5]
>
> FN5. The parties' physical presence in the hearing room substantially affects our analysis of this issue. If these same remarks were uttered outside the courtroom, a different question might be presented on the issue of absolute privilege, depending upon the particular circumstances. *See, e.g., Petrus v. Smith*, 91 A.D.2d 1190, 459 N.Y.S.2d 173 (1983) (absolute privilege may not extend to statements made outside the courthouse); *Sussman v. Damian*, 355 So.2d 809 (Fla.Dist.Ct.App.1977) (statements made on elevator held not absolutely privileged).

541 A. 2d at 623.

Accordingly, although the absolute privilege of witnesses and counsel has been extended in Maryland and in the District of Columbia to administrative proceedings, the nature and extent of the safeguards present in such proceedings are critically important to the application of the privilege.

In the present case, the "parties" (i.e. Mr. Barnes, his attorney Mr. Stein, and Ms. Cloonan) were not "involved in litigation;" nor were they "present in a hearing room" or "awaiting commencement of the proceeding." In fact, they were a thousand miles apart at the time the defamatory words were written: Ms. Cloonan was in Georgia and Mr. Barnes and Mr. Stein were in the Washington, D.C., area. As a result, none of the safeguards that the District of Columbia or Maryland Courts of Appeal have insisted upon to apply the absolute privilege are present in this case, and the privilege should not be allowed.

9

## B. The Letter is Not Protected by a Qualified Privilege

Alternatively, Defendant Stein asserts that his letter is protected under the "common interest" qualified privilege doctrine. Under this doctrine, a defamatory statement is protected if it is: (1) made in good faith; (2) on a subject in which the party communicating has an interest; and (3) to a person who has such a corresponding interest. Novecon, Ltd. v. Bulgarian-American Enterprise Fund, 977 F. Supp. 45, 49 (D.D.C. 1997) aff'd 190 F. 3d 556 (D.C. Cir 1999). Furthermore, even if a qualified privilege exists, it can be defeated by a showing of malice. Dickens v. International Bhd. of Teamsters, 171 F. 2d 21, 24 (D.C. Cir. 1998). The existence of malice is question of fact for the jury. Novecon, Ltd., 190 Fed. 3d at 566; Mosrie v. Trussell, 467 A. 2d 475, 477 (D.C. 1983).

In the instant case, none of the elements of a qualified privilege are present. First, on its face, the letter reeks of bad faith. It accuses Ms. Cloonan of criminal, dishonest and infamous activity, filing multiple false claims, conspiracy with other staff, disorderly conduct, threatening to inflict bodily injury, stalking Mr. Barnes, etc., all without one iota of proof. Second, neither Mr. Barnes not his attorney, Mr. Stein, had "an interest" in trashing Ms. Cloonan's reputation within the U.S. Marshals Service or within the other agencies to whom he sent the letter. Third, none of the recipients of the letters had a "corresponding interest" in receiving these unsupported criminal accusations. Most obviously, the U.S. Office of Special Counsel had no ongoing or contemplated administrative proceeding involving either Ms. Cloonan or Mr. Barnes at the time of the letter. Thus, that agency had no interest whatsoever. Moreover, there is no allegation that the Director of the U.S. Marshals Service or the Chief EEO Officer of the Marshals Service had any interest at all in Ms. Cloonan or Mr. Barnes.

Finally, it should be emphasized that even if there is any doubt that a qualified privilege might apply to these circumstances, whether the privilege was abused by Defendant Stein's malice is a question of fact, which cannot be dismissed under Rule 12 (b) (6).

## CONCLUSION

For the reasons presented, the Plaintiff asks this Court to deny Defendant Stein's Motion to Dismiss under Rule 12 (b) (6). Under either Maryland or District of Columbia law, no absolute privilege exists to protect Mr. Stein from the extraordinarily vituperative and vile accusations that he published in the name of his client. Not is there a qualified privilege that applies, but even if one might appear, the issue of malice has yet to be explored in discovery or presented to a jury.

> Respectfully submitted,
> Sheila Cloonan
> By counsel

GRAD, LOGAN & KLEWANS, P.C.

_____/s/ K. Byrnes_____
Kevin Byrnes, Esq. (DC Bar #480195)
Francis X. McCullough, Esq. (DC Bar #350918)
3141 Fairview Park Drive, Suite 350
Falls Church, Virginia 22042
Telephone: 703-548-8400
Direct Line: 703-535-5393
Facsimile: 703-836-6289
Email: kbyrnes@glklawyers.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July, 2008, a true copy of the foregoing Plaintiff's Memorandum in Opposition to Defendant Paul T. Stein's Motion to Dismiss was delivered by filing and entering the same upon the electronic court filing website of the United States District Court of the District of Columbia, to the attention of Defendants' counsel, as follows:

| | |
|---|---|
| Pamela Bresnahan, Esq. | Jeffrey A. Taylor, Esq. |
| Elizabeth Treubert Simon, Esq. | Rudolph Contreras, Esq. |
| Vorys, Sater, Seymour and Pease, LLP | Christopher B. Harwood, Esq. |
| 1828 L Street, N.W., 11th Floor | 555 Fourth Street, N.W. |
| Washington D.C., 20031 | Washington, D.C. 20530 |
| Telephone: 202-467-8800 | Telephone: 202-307-0372 |
| Facsimile: 202-467-8900 | Facsimile: 202-514-8780 |
| Email: pabresnahan@vssp.com | Email: christopher.harwood@usdoj.gov |
| *Attorneys for Defendant Stein* | *Attorneys for Federal Defendants* |

/s/ K. Byrnes
Kevin Byrnes, Esq. (DC Bar #480195)
Francis X. McCullough, Esq. (DC Bar #350918)
3141 Fairview Park Drive, Suite 350
Falls Church, Virginia 22042
Telephone: 703-548-8400
Direct Line: 703-535-5393
Facsimile: 703-836-6289
Email: kbyrnes@glklawyers.com
*Counsel for Plaintiff*

## STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850-2204

www.steinsperling.com

TELEPHONE (301) 340-2020

WRITER'S DIRECT DIAL:
(301) 838-3201

WRITER'S DIRECT FAX:
(301) 354-8107

WRITER'S E-MAIL ADDRESS:
pstein@steinsperling.com

FRED A. BALKIN*
MILLARD S. BENNETT•
ALEXIA KENT BOURGERIE*
DAVID B. DE JONG•
JOLIE S. DEUTSCHMAN•
DAVID C. DRISCOLL, JR.•
STUART S. GREENFEIG*
ANN G. JAKABCIN†
JEFFREY M. SCHWABER•
DARCY A. SHOOP•
DONALD N. SPERLING†
PAUL T. STEIN*

MD., DC., VA., FL.•
MD., DC., VA., NY.•
MD., DC., PA., NJ.π
MD., DC., VA.•
MD., DC., NY.≍
MD., VA., NC.♦
MD., DC.*
MD. ONLY•

RONALD M. BOLT*
E. ANDREW COLE•
JAMES W. DAWSON, JR.•
BRIAN R. DELLA ROCCA*
FRANK W. DUNHAM, III¤
JEFFREY FENSTER•
ROBERT J. GARAGIOLA*
MELIHA PÉREZ HALPERN†
MONICA G. HARMS*
JONATHAN F. LIEBERMAN•
IVONNE C. LINDLEY†
MARY CRAINE LOMBARDOπ
DARLA J. MCCLURE*
DEANNA L. PETERS◄
DIEGO J. ROJAS*
DAVID A. ROSEN†
KAREN N. SHAPIRO•

OF COUNSEL:
KEVIN P. FAY*
ALAN S. KERXTON•
SUE ANN MAHAFFEY*
BETH McINTOSH IRVINE•
DAVID R. PODOLSKY•
WILLIAM J. SCOTT•

OUR FILE NUMBER

October 22, 2007

Mr. Joseph M. Band, Senior Counsel
Office of the General Counsel
United States Marshals Service
Washington, D.C. 20530

RE: Ms. Sheila Cloonan versus the U.S. Department of Justice
Docket Number AT-1221-07-0888-I-1

Dear Mr. Band:

Please be advised that Dave Barnes, who is a management official at the United States Marshals Service (USMS), is represented by Jacob A. Stein, of the Law Offices of Stein, Mitchell and Mezines in Washington, D.C. Any requests for interviews or depositions for any case or action must be coordinated through Mr. Stein. Mr. Barnes will shortly have legal matters before the Department of Justice, which may conflict with other cases, including those involving specific USMS employees such as Ms. Sheila Cloonan. Mr. Barnes therefore, has asserted his right to representation by Counsel, and demands reimbursement of lawyer fees for any contacts made of him by Ms. Cloonan's lawyer because of her continued harassment.

Mr. Barnes is entitled to the same rights and protections afforded all federal government employees, which includes a work place safe and free from harassment, intimidation and threats. Because Ms. Cloonan has evidently been involved in an orchestrated campaign with other staff to repeatedly file unfounded, false, allegations against Mr. Barnes, over a significant time period, he has not been privileged to such a workplace. In addition, Ms. Cloonan has not prevailed in any complaints that she has filed against Mr. Barnes in the past few years.

# Exhibit 1

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

Mr. Joseph M. Band, Senior Counsel
October 22, 2007
Page 2

     Did anyone miss the fact that Mr. Barnes was vindicated and completely cleared during March 2007 of all charges after a lengthy OIG investigation, USMS review, and then a hearing by an Administrative Judge that cleared him? Has anyone missed the fact that Mr. Barnes has had over 17 complaints filed against him by the likes of Cloonan and her cohorts for the past 4 years, and Mr. Barnes has been cleared on all of those complaints, grievances and EEO cases?

     Evidently, Ms. Cloonan has been involved in filing multiple, false complaints for the past several years with various entities that include the USMS Equal Employment Opportunity Office; the U.S. Office of Special Counsel; the USMS Office of Internal Affairs; and the Department of Justice (DOJ), Office of Inspector General; the federal Occupational Safety and Health Administration, and Mr. Barnes' supervisors. It appears that Ms. Cloonan's latest attempts to vilify Mr. Barnes now lays at the doorstep of the Merit Systems Protection Board (MSPB) in an attempt to obfuscate the facts of her case.

     If necessary, we intend to enter a brief with the MSPB Administrative Judge to ensure that the record in this matter is set straight, as it appears that Ms. Cloonan and her representative may have misrepresented facts regarding Mr. Barnes with the MSPB and EEO office in order to confuse the issues and to deflect from Ms. Cloonan's most current complaint. If this is the case, Mr. Barnes is insisting that both be held accountable and Cloonan's representative be sanctioned for misrepresentation of the facts and misconduct, by the MSPB, and/or the District of Columbia and Virginia Bar's.

     The issue before the USMS and MSPB does not involve, nor is about Mr. Barnes. Mr. Barnes has not been in Ms. Cloonan's chain of command since September 30, 2006, and had nothing to do with the decision when the agency evidently offered Ms. Cloonan employment at the USMS Training Academy which she accepted.

     The overall USMS employment record for Ms. Cloonan will evidently depict an employee that has been very disruptive to government operations for years. In responses to the last EEO complaint that Ms. Cloonan filed, my client asserts that at least 7 different managers indicated, or are now willing to come forward regarding allegations of aberrant and disruptive behavior by Ms. Cloonan for years. Mr. Barnes and his subordinate managers will indicate that Ms. Cloonan constantly tried to blackmail them with threats and the constant filing of complaints to various entities in attempts to get her own way.

     Until recently, this employee's office was in the Atlanta Courthouse and she reported to staff in Arlington, Virginia. It appears from the record that Cloonan could not even get along with staff in the Atlanta USMS office that she did not work for. She had multiple concerns and complaints filed by operational District staff in Atlanta against her for constant, documented, as they said "**unstable fits of rage**". They documented Cloonan's behavior in writing when it happened using this exact language. Multiple managers will evidently confirm her disruptions, use of vulgar language when talking down to managers, and failing to follow instructions, etc.

     Chief Barnes alleges that Ms. Cloonan targeted, harassed and tendered multiple false statements against him, without any proof, for the past several years. Her conduct was intended to damage his career, promotion potential and reputation, and has cost him substantial legal fees and personal stress. Her actions have created and perpetuated a hostile work environment that violated my client's privacy rights, as Mr. Barnes has literally been stalked by Ms. Cloonan by her filing multiple, unsubstantiated, false complaints, and overt threats. For instance, it is documented in writing that Ms. Cloonan entered an

)/25/2007 14:15 FAX   3018383239                                                                 ☒004/005

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

Mr. Joseph M. Band, Senior Counsel
October 22, 2007
Page 3

elevator in the Atlanta Federal Building and Courthouse and started talking to staff that her boss was going to jail, naming Mr. Barnes. Her statement was reckless, baseless gossip that was untrue and egregious to the detriment of Mr. Barnes.

Ms. Cloonan has not prevailed in any complaint to date against Mr. Barnes. The information provided herein provides a clear and convincing demonstration that this employee's goal was to contribute toward the removal of a manager in her chain of command that tried to hold Cloonan accountable for her work and disruptive behavior on the job, and the employee repeatedly threatened this manager, continually filing complaints and gossiping, which subsequently created a hostile work environment for Mr. Barnes:

Ms. Cloonan's behavior in harassing and filing numerous false complaints and EEO's against Mr. Barnes constitute misconduct as specified in the Department of Justice Standard Schedule of Disciplinary Offenses and Penalties.

1) Ms. Cloonan's actions in making veiled threats, threatening to file complaints if she did not get her way, and her disruptive behavior would appear to constitute a violation of Offense #17, "disorderly conduct, fighting, threatening or attempting to inflict bodily injury to another, engaging in dangerous horseplay." Ms. Cloonan's angry outbursts and vulgar language toward supervisors was threatening and her constant threats to file complaints against managers were attempts to get her way.

2) It also appears as though Ms. Cloonan has violated Offense #18, "disrespectful conduct; use of insulting, abusive or obscene language to or about others." Ms. Cloonan's conduct in filing her complaints and conversing about Dave Barnes in the office has been insulting and abusive. Her constant attacks on Mr. Barnes reputation and numerous offensive comments about his character to various government agencies are despicable, without any proof whatsoever.

3) Ms. Cloonan has also engaged in Offense #21, "criminal, dishonest, infamous or notoriously disgraceful conduct." Her repeated false accusations are inexcusable and show nothing but a vindictive, abusive, and dishonest nature.

4) Ms. Cloonan's actions in filing repeated false complaints against Mr. Barnes knowing that they are false appears to be a violation of Offense #22, Falsification, misstatement, exaggeration or concealment of material fact in connection with employment, promotion, travel voucher, any record, investigation or other proper proceeding. Ms. Cloonan's actions in filing repeated false complaints would constitute numerous infractions under Offense #22 as stated above.

Relevant case law is William E. Curdy v. Department of Veterans Affairs, February 11, 2005 where the U.S. Court of Appeals, Federal Circuit, and the Circuit essentially stated that an employee claiming to be involved in protected activities (as evidently Ms. Cloonan does) did not justify acting in a threatening, hostile or disruptive way. They upheld an employee's removal for threatening behavior towards a supervisor, creating a hostile work environment, failure to follow instructions, using insulting language toward a supervisor and five counts of disrespectful conduct. The Judge also upheld the

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

Mr. Joseph M. Band, Senior Counsel
October 22, 2007
Page 4

removal over an affirmative defense of the Whistleblower Protection Act. Ms. Cloonan's actions clearly parallel the facts in the Curdy case on the specifications.

Finally, an employee that has committed wrongful acts, just like we believe Ms. Cloonan has, and claims to be a whistleblower may not shield herself from any agency disciplinary action through invocation of the Whistleblower Protection Act (WPA). Ms. Cloonan evidently claims to be a Whistleblower which in all probability caused the agency not to take personnel actions against her aberrant behavior. To invoke the WPA to shield oneself from the consequences of one's own wrongful actions runs counter to the very heart of the WPA's intention of eliminating Government illegality, waste, and corruption. The statutory language and the legislative intent behind the WPA, clearly states that an employee cannot invoke the WPA to shield herself from the negative consequences of her own wrongful actions. The relevant legal provision is Whistleblower Protection Act of 1989, 101 P.L. 12; 103 Stat. 16 Section 1221 (e) (1) and (2).

In conclusion, please refer all correspondence to Mr. Jacob Stein regarding any case, action or matter that involves Mr. Barnes. Ms. Cloonan's most current EEO filing and MSPB case is evidently about claims of retaliation for prior EEO activity, in which her disruptive and aberrant behavior were documented. There is not one scintilla of evidence that Mr. Barnes had anything to do with Cloonan's new assignment, and was not involved in the USMS's action, as he had not been involved in her new chain of command.

Very truly yours,

Paul T. Stein

cc: Mr. Scott J. Bloch, Director, U.S. OSC
    Mr. Kevin Byrnes, Esquire
    Mr. John F. Clark, Director USMS
    Mr. Anthony W. Cummings, MSPB Administrative Judge (Atlanta)
    Ms. JoAnn Grady, USMS EEO Office
    Mr. Jacob A. Stein, Esquire

L:\CLIENTS\S\STEIN.PAU\BARNES\001-1-BAND.LTR.doc

**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-254-3600

Ms. Sheila Cloonan
c/o Kevin Byrnes
Wade & Byrnes, P.C.
616 North Washington Street
Alexandria, Virginia 22314

AUG 3 1 2007

Re: <u>OSC File No. MA-07-2064</u>

Dear Ms. Cloonan:

By letter dated July 19, 2007, we informed you of our preliminary determination not to take action on your complaint. We have received and reviewed the comments you sent in response to our preliminary determination. However, we contacted your attorney, Kevin Byrnes, on August 7, 2007, to request additional information regarding your complaint. We requested that this information be received by August 14, 2007. On August 7, 2007, we received an automatic out-of-office message from your attorney indicating that he would be on vacation until August 14, 2007. Per the instructions in that out-of-office message, we contacted Matthew Sutter on August 7, 2007, regarding the additional information necessary for us to make a decision regarding the disposition of your complaint. Mr. Sutter returned our call on August 8, 2007, and reiterated that Mr. Byrnes was out of the office. He suggested that we email our questions to him and that he would discuss the matter with Mr. Byrnes. Our questions were forwarded to Mr. Sutter on August 8, 2007.

Mr. Byrnes also responded via a personal email account on August 8, 2007, verifying that he would be unavailable until August 14, 2007. We extended the period for your response accordingly, and requested the information no later than August 22, 2007. We have not received any response at this time.

It appears that retaliation for engaging in whistleblowing activity may have occurred. However, because your legal representative repeatedly ignored requests for specific and pertinent information, initially requested on August 7, 2007, we are unable to make a legal determination in your favor. Accordingly, we have closed our file on your complaint. When and if you are able to provide the requested information, you can ask that we reopen your complaint.

We are also sending to you a separate letter discussing rights that you may have to seek corrective action from the Merit Systems Protection Board (the Board). Because you alleged reprisal for whistleblowing under 5 U.S.C. § 2302(b)(8), you may have a right to seek corrective action from the Board under the provisions of 5 U.S.C. sections 1214(a)(3) and 1221. A request for corrective action may be filed with the Board within sixty-five (65) days after the date of this letter. The Board's regulations concerning rights to file a corrective action case with the Board can be found at 5 C.F.R. Parts 1201-1206 and 1209.

Sincerely,

Martha V. Sheth
Attorney
Complaints Examining Unit

**Exhibit 2**

U.S. DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHEILA CLOONAN          )
                        )
    Plaintiff,          )
                        )
v.                      )   Civil Action No. 1:08-cv-0700 (HHK)
                        )
MICHAEL B. MUKASEY, et al. )
                        )
    Defendants.         )
_____)

## ORDER

Having read and considered Paul T. Stein's Motion to Dismiss Plaintiff's Complaint, Plaintiff's Opposition and Defendant's reply thereto, and the record herein, it is, this _____ day of _____, 2008,

**ORDERED**, that Defendant Paul T. Stein's Motion to Dismiss be, and the same hereby is, **DENIED**.

_____
HENRY H. KENNEDY, JR.
Judge, United States District Court for
the District of Columbia