**U.S. DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHEILA CLOONAN     , )
            )
    Plaintiff,     )
            )
v.            )  Civil Action No. 1:08-cv-0700 (HHK)
            )
MICHAEL B. MUKASEY, et al.   )
            )
    Defendants.   )
_____ )

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

  Plaintiff Sheila Cloonan, by counsel, hereby files her Memorandum in Opposition to the Federal Defendants' Motion to Dismiss and for Summary Judgment and for grounds states as follows:

## INTRODUCTION

  This is an action by the Plaintiff Sheila Cloonan for violation of the Privacy Act against the U.S. Marshals Service (and certain pro forma named individuals) (collectively called the "Federal Defendants") and for defamation against one of those individuals, David Barnes, and his former attorney, Paul T. Stein, Esq.  The Federal Defendants have filed a motion to dismiss the defamation count against them under Rule 12 (b)(1) on the basis that this Court allegedly lacks subject matter jurisdiction, and they have filed for summary judgment of the Privacy Act claim under Rule 56 on the basis that none of the disclosures concerning Ms. Cloonan's official record allegedly came from the Marshals Service's system of records.  By this Memorandum, the Plaintiff asks this Court to deny the Federal Defendants' Motion to Dismiss and for Summary Judgment.

1

## FACTS

1.      As alleged in the instant Complaint, Plaintiff Sheila Cloonan is a long term employee of the U.S. Marshals Service who was transferred and downgraded from a GS-13 position to a GS-12 position in June 2007, after filing various complaints with the Equal Employment Opportunity ("EEO") Office, the Department of Labor, and the Office of the Special Counsel concerning the discriminatory and illegal actions of her second-tier supervisor, David Barnes.  Ms. Cloonan also filed an administrative appeal with the Merit Systems Protection Board ("MSPB") contesting her downgrading from a GS-13 to a GS-12 position.

2.      On October 22, 2007, Defendant Paul T. Stein, Esq., apparently Mr. Barnes' then counsel, sent an unsolicited letter to Joseph M. Band, Esq., counsel for the U.S. Marshals Service who was representing the Marshals Service in the case of <u>Sheila Cloonan vs. U.S. Department of Justice</u>, the MPSB administrative appeal referenced above.  (A copy of Mr. Stein's letter of October 22, 2007 is attached as Exhibit 1 to the Complaint and is also attached as Exhibit 1 herein.)

3.      The ostensible purpose of Mr. Stein's letter to Mr. Band was to inform the Marshals Service counsel that Mr. Stein's then client, David Barnes, "is represented by Jacob A. Stein of the Law Offices of Stein, Mitchell and Mezines in Washington, D.C.," and that "any requests for interviews or depositions for any case or action must be coordinated through Mr. [Jacob] Stein."  (Exhibit 1, first paragraph)

4.      However, the actual purpose of Mr. Stein's letter to Mr. Band is found in the remaining three pages of the letter which excoriate Ms. Cloonan with the following incendiary accusations:

a.    Ms. Cloonan had engaged in "criminal, dishonest, infamous or notoriously disgraceful conduct" in her actions regarding Mr. Barnes;

b.    Ms. Cloonan was guilty of "falsification, misstatement, exaggeration or concealment of material fact" during her employment with the Marshals Service.

c.    Ms. Cloonan was guilty of "disorderly conduct, fighting, threatening or attempting to inflict bodily injury" on Mr. Barnes;

d.    Ms. Cloonan had "literally stalked" Mr. Barnes by filing "multiple false complaints and overt threats;"

e.    Ms. Cloonan "intended to damage Mr. Barnes' career, promotion opportunities, and reputation;"

f.    Ms. Cloonan had "targeted, harassed, and made false statements" against Mr. Barnes;

g.    Ms. Cloonan had attempted to "blackmail" Mr. Barnes and others;

h.    Ms. Cloonan intended "to vilify Mr. Barnes" with the MSPB in order to "obfuscate the facts;" and

i.    Ms. Cloonan was part of "an orchestrated campaign with other staff" to repeatedly file "unfounded, false allegations" against Mr. Barnes;

5.    It is important to point out that these unsolicited assaults on Ms. Cloonan's character, integrity, and job performance were not requested from or directed to any court or administrative tribunal.  Nor were they contained in any pleading or affidavit filed in such a proceeding.  Rather, they were gratuitously sent to counsel for a government agency (the U.S. Marshals Service) involved in an administrative proceeding filed by Ms. Cloonan, to which Mr. Barnes, Mr. Stein's client, was not a party.

6.      Even worse, unsolicited copies of Mr. Stein's scathing letter of October 22, 2007 attacking Ms. Cloonan were deliberately scattered throughout the highest levels of the federal government offices in Washington, D.C., and to other locations in the country with the obvious intent of destroying Ms. Cloonan's reputation and standing with her employer and poisoning her administrative claims and appeals.  Thus, copies were sent by Mr. Stein to: (1) Scott J. Bloch, the Director of the U.S. Office of Special Counsel, the agency that had formerly been involved in investigating her claims of whistleblower retaliation; (2) John F. Clark, the Director of the U.S. Marshals Service, the employer of Ms. Cloonan; (3) Anthony W. Cummings, an MSPB administrative law judge in Atlanta, Georgia; (4) Joann Grady, the chief EEO Officer for the U.S. Marshals Service; and (5) counsel for both Ms. Cloonan and Mr. Barnes.  (There is no known tally of how many dozens of agency officials and staff have read Mr. Stein's letter to date.)

7.      There is no evidence or allegation that Mr. Bloch, the Director of the Office of Special Counsel, Mr. Clark, the Director of the U.S. Marshals Service, or Ms. Grady, the chief EEO Officer for the Marshals Service, had any involvement whatsoever in any of Ms. Cloonan's complaints or administrative proceedings or had even requested any information about Ms. Cloonan.  Furthermore, at the time of Mr. Stein's letter, the U.S. Office of Special Counsel had already completed its review of Ms. Cloonan's whistleblower retaliation claim and had closed its file on the complaint (see Exhibit 2 herein).  As a result, there was no active investigation or administrative proceeding involving Ms. Cloonan within the Office of Special Counsel on October 22, 2007, the date of Mr. Stein's defamatory letter to the Director of that agency.

8.    Also contained in Mr. Stein's letter of October 22, 2007 was a series of disclosures concerning Ms. Cloonan's official record with the Marshals Service. Included in those disclosures were the following:

a.    Ms. Cloonan was allegedly involved in an "orchestrated campaign with other staff to repeatedly file unfounded false allegations against Mr. Barnes over a significant period of time."

b.    "Ms. Cloonan has not prevailed in any complaints that she has filed against Mr. Barnes in the past few years."

c.    "Ms. Cloonan has been involved in filing multiple false complaints for the past several years with various entities" including the Marshals Service EEO Office, the U.S. Office of Special Counsel, the Marshals Service Office of Internal Affairs, the Dept. of Justice, OSHA, and the Merit Systems Protection Board.

d.    Ms. Cloonan and her representative may have <u>misrepresented facts regarding Mr. Barnes with the MSPB and EEO Office</u>." (Emphasis added.)

e.    "<u>The overall employment record</u> for Ms. Cloonan will evidently depict an employee that has been very disruptive to government operations for years." (Emphasis added.)

f.    "<u>In responses to the EEO complaint</u> that Ms. Cloonan filed,... at least seven different managers indicated, or are willing to come forward regarding allegations of aberrant and disruptive behavior by Ms. Cloonan for years." (Emphasis added.)

g.    "Mr. Barnes and his subordinate managers will indicate that Ms. Cloonan constantly tried to blackmail them with threats and the constant filing of complaints to various entities in attempts to get her own way."

h.    "It appears from the record that Cloonan could not even get along with staff in the Atlanta USMS office that she did not work for." (Emphasis added.)

i.    "[Ms. Cloonan] had multiple concerns and complaints filed by operational District staff in Atlanta against her."

j.    "Multiple managers will evidently confirm her disruptions, use of vulgar language when talking down to managers, and failing to follow instructions."

k.    "[I]t is documented in writing that Ms. Cloonan entered an elevator in the Atlanta Federal Building and Courthouse and started talking to staff that her boss was going to jail, naming Mr. Barnes."

l.    "Ms. Cloonan has not prevailed in any complaint to date against Mr. Barnes."

m.    "Ms. Cloonan's angry outbursts and vulgar language toward supervisors was threatening and her constant threats to file complaints against managers were attempts to get her own way."

n.    "[Ms. Cloonan made] constant attacks on Mr. Barnes' reputation and numerous offensive comments about his character to various government agencies."

o.    "Ms. Cloonan evidently claims to be a Whistleblower which in all probability caused the agency not to take personnel actions against her aberrant behavior." (Emphasis added.)

p.    "Ms. Cloonan's most current EEO filing and MSPB case is evidently about claims of retaliation for prior EEO activity, in which her disruptive and aberrant behavior were documented." (Emphasis added.)

## SUMMARY OF ARGUMENT

The Plaintiff asks this Court to deny the Federal Defendants' Motion for Summary Judgment on the Privacy Act violations. Despite Mr. Barnes' self-serving Declaration that none of the information that he discussed with Mr. Stein in formulating the letter of October 22, 2007 came from agency records, the facts indicate otherwise. Indeed, almost all of the details contained in Mr. Stein's letter came from an EEO "Report of Investigation" which was completed by the EEO Office of the Marshals Service on or about September 29, 2006. (Exhibit 3 herein is the transmittal letter of the Report.) Ironically, the cover letter to the Report specifically warns that "This report is subject to the Privacy Act of 1975 (5 USC 552a)." Thus, it appears quite clearly that Mr. Barnes <u>had</u> access to that Report when he caused Mr. Stein to write the letter of October 22, 2007, which included many details contained in that Report. At the very least, there are material facts in dispute on whether the Privacy Act was violated which preclude summary judgment.

Similarly, the Plaintiff asks this Court to deny the Federal Defendants' motion to dismiss the defamation count, which is based on their assertion that Mr. Barnes was acting within the scope of his employment. Despite the Federal Defendants' wishful thinking to the contrary, a government employee's contacting a private practice attorney and instructing him to issue a defamatory letter containing the confidential agency records of another employee in violation of a federal criminal statute cannot possibly fall within the "scope of employment" of that employee. Again, at the very least, there are material facts in dispute concerning Mr. Barnes' scope of employment with the Marshals Service which preclude dismissal under Rule 12 (b)(1).

## LEGAL STANDARDS

### Summary Judgment

The Federal Defendants seek summary judgment as to Plaintiff's Privacy Act claim pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, summary judgment is available when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Cov. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. See Celotex Corp. v. Vatrett, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but... must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248.

## ARGUMENT

### I. Summary Judgment Should Be Denied on the Privacy Act Claim

The Federal Defendants seek summary judgment on Plaintiff's Privacy Act claim on the grounds that there are supposedly no facts in dispute that protected agency records of the Marshals Service were not used without Ms. Cloonan's consent to form the basis for Mr. Stein's letter of October 22, 2007. Ultimately, however, the entire basis for their motion for summary judgment is Mr. Barnes' self-serving statement in his Declaration that he did not use agency records in his dealings with Mr. Stein (Barnes Declaration, par. 9).

By sharp contrast, Mr. Stein's letter itself is laced with many specific references to Ms. Cloonan's official records, which could only have been obtained from records protected by the

8

Privacy Act.  As referenced in the Facts section above, Mr. Stein's letter contains allegations that Ms. Cloonan "misrepresented facts regarding Mr. Barnes with the MSPB and EEO Office."  The only way for Mr. Barnes (through Mr. Stein) to report what Ms. Cloonan represented to the MSPB and the EEO Office would be for him to have reviewed those agency records.  Similarly, Mr. Barnes (through Mr. Stein) states that "In response to the EEO complaint that Ms. Cloonan filed… at least seven managers indicated… aberrant and disruptive behavior by Ms. Cloonan for years," and that "her disruptive and aberrant behavior" was "documented" in her "prior EEO activity."  Once again, however Ms. Cloonan or others responded in an EEO investigation or what was documented in that investigation must have come from agency records.  It should also be noted that Mr. Stein's letter refers to "The overall employment record for Ms. Cloonan… for years" and "It appears from the record that Cloonan could not even get along with staff in Atlanta."  Thus, there are numerous references to Ms. Cloonan's agency "records" in the letter.

Furthermore, the voluminous EEO Report of Investigation which resulted from Ms. Cloonan's complaints against the Marshals Service and Mr. Barnes for discrimination and retaliation contains many of the same allegations by the same seven managers that are referenced in Mr. Stein's letter and in Mr. Barnes' Declaration.  As indicated in the attached Declaration of Mr. Byrnes, the EEO Report of Investigation which was forwarded to Ms. Cloonan's counsel over one year before Mr. Stein's letter contained the affidavits of Mr. Barnes and six other Marshals Service managers detailing the same allegations and in some instances using the identical language as found in Mr. Stein's letter (Byrnes Declaration, pars. 5 - 9).[1]

In Plaintiff's view, both Mr. Stein's letter itself and the EEO Report of Investigation directly contradict the statements of Mr. Barnes in his Declaration that he did not review any

---

[1] The Report of Investigation of the United States Marshals Service on Sheila Cloonan, Case Number M06-0016, is voluminous, containing hundreds of pages.  Plaintiff has not filed it as an Exhibit for reasons of length and confidentiality.  The Plaintiff will file the document in its entirety under seal, should the Court request it.

agency records concerning Ms. Cloonan or discuss their contents with Mr. Stein and that the letter does not contain information derived from agency records.  As a result, consistent with Bartel v. Federal Aviation Administration, 725 F. 2d 1403 (D.C. Cir 1984), Plaintiff believes that this Court should find either that the contents of Mr. Stein's letter of October 22, 2007 were retrieved from the Marshals Service's system of records in violation of the Privacy Act or that there are at least material facts in dispute at this stage to preclude summary judgment.

### II. The Motion to Dismiss the Defamation Count Should Be Denied

The Federal Defendants also ask this Court to dismiss the defamation count against Mr. Barnes on the grounds that Mr. Barnes was acting within the scope of his employment at the time of his actions in this case and, specifically, when he contacted and shared the information concerning Ms. Cloonan with Mr. Stein.  Should this Court agree that, as a matter of law, Mr. Barnes was acting within the scope of his employment, the individual defamation count against him would then disappear and the United States would automatically be substituted as the proper party.  The United States would then be entitled to dismissal of the defamation count, as a matter of law, because the federal government has not waived sovereign immunity for defamation.

The principal problem with the Federal Defendants' position, however, is establishing that Mr. Barnes was supposedly acting within the scope of his employment *as a matter of law* when Mr. Barnes:

1.    Telephoned a private practice attorney for representation during regular duty hours at a time when he was not named as a party in any legal proceedings; and

2.    Provided that attorney with information derived from confidential, federally-protected agency records of another employee, Sheila Cloonan; and

3.    Instructed that attorney to write a defamatory letter accusing that other employee of criminal, malicious, and dishonest behavior; and

4.    Circulated that defamatory letter with all of its illegally obtained agency information to various other government agencies and individuals with no stated interest in its contents; and

5.    Did all of the above maliciously and in violation of both civil and criminal provisions of the Privacy Act.

Despite the Federal Defendants' arguments and "certification" to the contrary, such tortious and criminal activities cannot possibly be considered to be "within the scope of employment" of an employee of the U.S. Marshals Service, one of the premiere law enforcement agencies of the U.S. government.

Plaintiff believes that the law of the District of Columbia should apply, since that is where the letter was sent and the tort occurred.  Williams v. United States, 350 U.S. 857, 76 S. Ct. 100, 100 L. Ed. 761 (1955).  Nevertheless, whether Virginia or District of Columbia law applies to the scope of employment issue, whether or not an employee is acting within the scope of his employment is almost always an issue of fact for trial.

Under District of Columbia law, "scope of employment questions are generally viewed as questions of fact best resolved by a jury." Majano v. United States, 469 F. 3d 138, 140 (D.D.C. Cir 2006) (citing cases).  Furthermore, "on the infrequent occasions when courts have resolved scope of employment questions as a matter of law, either by summary judgment or directed verdict, it has generally been to hold that the employee's actions was *not* within the scope of her employment…." Majano at 398.  (Italics in original.)

11

Under the law of the District of Columbia, "the moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable. The agent is not then acting within the scope of his authority in the business of the principal, but in furtherance of his ends." Majano at 399, quoting from Schecter v. Merch. Home Delivery, Inc., 892 A. 2d 415, 427 (D.C. 2006) "The key inquiry is the employee's intent at the moment the tort occurred." Majano supra. See also Jordan v. Medley, 711 F. 2d 211, 216 (D.C. Cir 1983) (Nature of the tort permits the imputation of a purely personal motivation); Penn Cent. Transp. Co. v. Reddick, 398 A. 2d 27 ("The outrageous quality of an employee's act may well be persuasive in considering whether his motivation was purely personal.").

The same result obtains under Virginia law, which the Federal Defendants contend apply here. While, under Virginia law, intentional torts have not automatically been placed outside the scope of employment for purposes of vicarious liability, they are a factor to be considered by the trier of fact in determining such liability. Blair v. Defender Services, Inc., 386 F. 3d 623, 627 (4th Cir. 2004) (citing Gina Chin & Assoc. v. First Union Bank, 260 Va 533, 537 S.E. 573 (Va. 2000). (The Blair court affirmed the summary judgment entered below, holding that a maintenance employee was outside the scope of his employment when he attacked a student.) Majorana v. Crown Central Petroleum Corp., 260 Va. 521, 526 (Va. 2000) (scope of employment issue to be decided by a jury, if issue is in doubt), quoting from Gina Chin & Assoc., Inc., supra.

In the instant case, Plaintiff believes that Mr. Barnes was clearly not acting within the scope of his employment, as a matter of law, when he published through his attorney a defamatory letter which also violated the Privacy Act. In any event, the issue should at the very

least be determined by the trier of fact under either District of Columbia or Virginia law, and the Defendants' motion to dismiss should be denied.

## **CONCLUSION**

For the reasons presented, Plaintiff Sheila Cloonan asks this Court to deny the Federal Defendants' Motion for Summary Judgment on the Privacy Act claim and deny their Motion to Dismiss the defamation count against David Barnes.

Respectfully submitted,
Sheila Cloonan
By counsel

GRAD, LOGAN & KLEWANS, P.C.

_____/s/ K. Byrnes_____
Kevin Byrnes, Esq. (DC Bar #480195)
Francis X. McCullough, Esq. (DC Bar #350918)
3141 Fairview Park Drive, Suite 350
Falls Church, Virginia 22042
Telephone: 703-548-8400
Direct Line:  703-535-5393
Facsimile: 703-836-6289
Email:  kbyrnes@glklawyers.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2008, a true copy of the foregoing Plaintiff's Memorandum in Opposition to the Federal Defendants' Motion to Dismiss and for Summary Judgment was delivered by filing and entering the same upon the electronic court filing website of the United States District Court of the District of Columbia, to the attention of Defendants' counsel, as follows:

Pamela Bresnahan, Esq.
Elizabeth Treubert Simon, Esq.
Vorys, Sater, Seymour and Pease, LLP
1828 L Street, N.W., 11th Floor
Washington D.C., 20031
Telephone: 202-467-8800
Facsimile: 202-467-8900
Email:  pabresnahan@vssp.com
*Attorneys for Defendant Stein*

Jeffrey A. Taylor, Esq.
Rudolph Contreras, Esq.
Christopher B. Harwood, Esq.
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: 202-307-0372
Facsimile: 202-514-8780
Email:  christopher.harwood@usdoj.gov
*Attorneys for Federal Defendants*

　　　　/s/ K. Byrnes　　　　　
Kevin Byrnes, Esq. (DC Bar #480195)
Francis X. McCullough, Esq. (DC Bar #350918)
3141 Fairview Park Drive, Suite 350
Falls Church, Virginia 22042
Telephone: 703-548-8400
Direct Line:  703-535-5393
Facsimile: 703-836-6289
Email:  kbyrnes@glklawyers.com
*Counsel for Plaintiff*

**U.S. DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHEILA CLOONAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:08-cv-0700 (HHK) |
| | ) | |
| MICHAEL B. MUKASEY, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF KEVIN BYRNES, ESQ.**

I Kevin Byrnes, Esq., hereby declare the following to be true and correct.

1.      I am counsel for the Plaintiff, Sheila Cloonan.  I am a member in good standing of the District of Columbia bar and the bar of this Court.

2.      I have read the Declarations of Joseph Band and David Barnes which were attached to the Federal Defendants' Motion to Dismiss and for Summary Judgment.

3.      I have read the letter from Paul T. Stein, Esq., dated October 22, 2007, to Mr. Band which contains many details concerning Ms. Cloonan's records within the U.S. Marshals Service over the past several years.

4.      I have also read and have a copy of the "United States Marshals Service Report of Investigation" of the EEO Office's investigation of Ms. Cloonan's complaint of discrimination and retaliation, Case Number M06-0016.  The Report of Investigation ("Report") was forwarded by the Marshals Service EEO Office to Ms. Cloonan's former counsel on or about September 29, 2006 with the specific warning: "This report is subject to the provisions of the Privacy Act of 1974 (5 USC 552a)." (Exhibit 3)

5.      Contained within that Report are affidavits of Ms. Cloonan and Mr. Barnes (the latter was the primary target of Ms. Cloonan's allegations of discrimination and retaliation), as well as the affidavits of other U.S. Marshals Service supervisors, managers, and employees and many other documents and exhibits.  Among the other U.S. Marshals Service managers who provided affidavits and documents to the EEO investigator and which are included in the Report are the following: (a) Joseph Buoncore; (b) Brian Fields; (c) William Mayles; (d) Jim McGregor; (e) Norman Hylton; and (f) Edward Stubbs.

6.      Every one of those Marshals Service managers was named by Mr. Barnes in his Declaration filed in this case as managers which he contends "shared their experiences regarding Plaintiff with me."  In fact, however, they also "shared their experiences" in the confidential EEO Report through their affidavits and responses to the investigator's questions.

7.      My review of that EEO Report, which is subject to the provisions of the Privacy Act, reveals that many of the substantive comments reflected in Mr. Stein's letter to Mr. Band of October 22, 2007 appear to have come from quoting or paraphrasing records gathered in the EEO process which were and are maintained by the Agency under Ms. Cloonan's name and which were and are subject to the Privacy Act.  See Ivey v. Snow, 2005 WL 2474880 (D.D.C. 2005) (J. Sullivan).  In fact, in several instances the language used in Mr. Stein's letter is either identical to or closely paraphrases the language used in the affidavits in the Report.

8.      For example, there are many references in that Report by these same managers to Ms. Cloonan's alleged: disruptive and aberrant behavior; blackmail; use of vulgar language; failing to follow instructions; talking down to managers; blaming others for her own failures; making negative comments on an elevator in the Courthouse about Mr. Barnes; threats to file complaints against managers if she didn't get her way; not prevailing on prior complaints against

Mr. Barnes and others; unstable fits of rage; and not getting along with her supervisors in the Atlanta office.

9.    All of these allegations by these various U.S. Marshals Service managers which are contained in the EEO Report are also contained in Mr. Stein's letter of October 22, 2007 in several instances verbatim or nearly verbatim.

10.    In my opinion, the only mechanism to determine the source of Mr. Stein's and Mr. Barnes' information is through the production of records and the examination of the individuals who have provided statements to the EEO and to Mr. Barnes.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Kevin Byrnes, Esq. (DC Bar #480195)
GRAD, LOGAN & KLEWANS, P.C.
3141 Fairview Park Drive, Suite 350
Falls Church, Virginia 22042


Executed on: August 6, 2008

## STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

### ATTORNEYS AT LAW
### 25 WEST MIDDLE LANE
### ROCKVILLE, MARYLAND 20850-2204

www.steinsperling.com

TELEPHONE (301) 340-2020

WRITER'S DIRECT DIAL:
(301) 838-3201

WRITER'S DIRECT FAX:
(301) 954-9107

WRITER'S E-MAIL ADDRESS:
pstein@steinsperling.com

FRED A. BALKIN*
MILLARD S. BENNETT*
ALEXIA KENT BOURGERIE*
DAVID B. DE JONG*
JOLIE S. DEUTSCHMAN*
DAVID C. DRISCOLL, JR.*
STUART S. GREENFEIG*
ANN G. JAKABCIN*
JEFFREY M. SCHWABER*
DARCY A. SHOOP*
DONALD N. SPERLING*
PAUL T. STEIN*

MD., DC., VA., FL.*
MD., DC., VA., NY.*
MD., DC., PA., NJ.*
MD., DC., VA.*
MD., DC., NY.*
MD., VA., NC.*
MD., DC.*
MD. ONLY*

RONALD M. BOLT*
E. ANDREW COLE*
JAMES W. DAWSON, JR.*
BRIAN R. DELLA ROCCA*
FRANK W. DUNHAM, III*
JEFFREY FENSTER*
ROBERT J. GARAGIOLA*
MELIHA PEREZ HALPERN*
MONICA G. HARMS*
JONATHAN R. LIEBERMAN*
IVONNE C. LINDLEY*
MARY CRAINE LOMBARDO*
DARLA J. MCCLURE*
DEANNA L. PETERS*
DIEGO J. ROJAS*
DAVID A. ROSEN*
KAREN N. SHAPIRO*

OF COUNSEL:
KEVIN P. FAY*
ALAN S. KERXTON*
SUE ANN MAHAFFEY*
BETH McINTOSH IRVIN*
DAVID R. PODOLSKY*
WILLIAM J. SCOTT*

OUR FILE NUMBER

October 22, 2007

Mr. Joseph M. Band, Senior Counsel
Office of the General Counsel
United States Marshals Service
Washington, D.C. 20530

RE: Ms. Sheila Cloonan versus the U.S. Department of Justice
      Docket Number AT-1221-07-0888-I-1

Dear Mr. Band:

Please be advised that Dave Barnes, who is a management official at the United States Marshals Service (USMS), is represented by Jacob A. Stein, of the Law Offices of Stein, Mitchell and Mezines in Washington, D.C. Any requests for interviews or depositions for any case or action must be coordinated through Mr. Stein. Mr. Barnes will shortly have legal matters before the Department of Justice, which may conflict with other cases, including those involving specific USMS employees such as Ms. Sheila Cloonan. Mr. Barnes therefore, has asserted his right to representation by Counsel, and demands reimbursement of lawyer fees for any contacts made of him by Ms. Cloonan's lawyer because of her continued harassment.

Mr. Barnes is entitled to the same rights and protections afforded all federal government employees, which includes a work place safe and free from harassment, intimidation and threats. Because Ms. Cloonan has evidently been involved in an orchestrated campaign with other staff to repeatedly file unfounded, false, allegations against Mr. Barnes, over a significant time period, he has not been privileged to such a workplace. In addition, Ms. Cloonan has not prevailed in any complaints that she has filed against Mr. Barnes in the past few years.

# Exhibit 1

☑ 003/005

25/2007 14:15 FAX  3018383239

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

Mr. Joseph M. Band, Senior Counsel
October 22, 2007
Page 2

Did anyone miss the fact that Mr. Barnes was vindicated and completely cleared during March 2007 of all charges after a lengthy OIG investigation, USMS review, and then a hearing by an Administrative Judge that cleared him? Has anyone missed the fact that Mr. Barnes has had over 17 complaints filed against him by the likes of Cloonan and her cohorts for the past 4 years, and Mr. Barnes has been cleared on all of those complaints, grievances and EEO cases?

Evidently, Ms. Cloonan has been involved in filing multiple, false complaints for the past several years with various entities that include the USMS Equal Employment Opportunity Office; the U.S. Office of Special Counsel; the USMS Office of Internal Affairs; and the Department of Justice (DOJ), Office of Inspector General; the federal Occupational Safety and Health Administration, and Mr. Barnes' supervisors. It appears that Ms. Cloonan's latest attempts to vilify Mr. Barnes now lays at the doorstep of the Merit Systems Protection Board (MSPB) in an attempt to obfuscate the facts of her case.

If necessary, we intend to enter a brief with the MSPB Administrative Judge to ensure that the record in this matter is set straight, as it appears that Ms. Cloonan and her representative may have misrepresented facts regarding Mr. Barnes with the MSPB and EEO office in order to confuse the issues and to deflect from Ms. Cloonan's most current complaint. If this is the case, Mr. Barnes is insisting that both be held accountable and Cloonan's representative be sanctioned for misrepresentation of the facts and misconduct, by the MSPB, and/or the District of Columbia and Virginia Bar's.

The issue before the USMS and MSPB does not involve, nor is about Mr. Barnes.  Mr. Barnes has not been in Ms. Cloonan's chain of command since September 30, 2006, and had nothing to do with the decision when the agency evidently offered Ms. Cloonan employment at the USMS Training Academy which she accepted.

The overall USMS employment record for Ms. Cloonan will evidently depict an employee that has been very disruptive to government operations for years. In responses to the last EEO complaint that Ms. Cloonan filed, my client asserts that at least 7 different managers indicated, or are now willing to come forward regarding allegations of aberrant and disruptive behavior by Ms. Cloonan for years. Mr. Barnes and his subordinate managers will indicate that Ms. Cloonan constantly tried to blackmail them with threats and the constant filing of complaints to various entities in attempts to get her own way.

Until recently, this employee's office was in the Atlanta Courthouse and she reported to staff in Arlington, Virginia. It appears from the record that Cloonan could not even get along with staff in the Atlanta USMS office that she did not work for. She had multiple concerns and complaints filed by operational District staff in Atlanta against her for constant, documented, as they said "unstable fits of rage". They documented Cloonan's behavior in writing when it happened using this exact language. Multiple managers will evidently confirm her disruptions, use of vulgar language when talking down to managers, and failing to follow instructions, etc.

Chief Barnes alleges that Ms. Cloonan targeted, harassed and tendered multiple false statements against him, without any proof, for the past several years. Her conduct was intended to damage his career, promotion potential and reputation, and has cost him substantial legal fees and personal stress. Her actions have created and perpetuated a hostile work environment that violated my client's privacy rights, as Mr. Barnes has literally been stalked by Ms. Cloonan by her filing multiple, unsubstantiated, false complaints, and overt threats. For instance, it is documented in writing that Ms. Cloonan entered an

☑004/005

25/20^7 14:15 FAX  3018383239

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

Mr. Joseph M. Band, Senior Counsel
October 22, 2007
Page 3

elevator in the Atlanta Federal Building and Courthouse and started talking to staff that her boss was going to jail, naming Mr. Barnes. Her statement was reckless, baseless gossip that was untrue and egregious to the detriment of Mr. Barnes.

Ms. Cloonan has not prevailed in any complaint to date against Mr. Barnes. The information provided herein provides a clear and convincing demonstration that this employee's goal was to contribute toward the removal of a manager in her chain of command that tried to hold Cloonan accountable for her work and disruptive behavior on the job, and the employee repeatedly threatened this manager, continually filing complaints and gossiping, which subsequently created a hostile work environment for Mr. Barnes:

Ms. Cloonan's behavior in harassing and filing numerous false complaints and EEO's against Mr. Barnes constitute misconduct as specified in the Department of Justice Standard Schedule of Disciplinary Offenses and Penalties.

1) Ms. Cloonan's actions in making veiled threats, threatening to file complaints if she did not get her way, and her disruptive behavior would appear to constitute a violation of Offense #17, "disorderly conduct, fighting, threatening or attempting to inflict bodily injury to another, engaging in dangerous horseplay." Ms. Cloonan's angry outbursts and vulgar language toward supervisors was threatening and her constant threats to file complaints against managers were attempts to get her way.

2) It also appears as though Ms. Cloonan has violated Offense #18, "disrespectful conduct; use of insulting, abusive or obscene language to or about others." Ms. Cloonan's conduct in filing her complaints and conversing about Dave Barnes in the office has been insulting and abusive. Her constant attacks on Mr. Barnes reputation and numerous offensive comments about his character to various government agencies are despicable, without any proof whatsoever.

3) Ms. Cloonan has also engaged in Offense #21, "criminal, dishonest, infamous or notoriously disgraceful conduct." Her repeated false accusations are inexcusable and show nothing but a vindictive, abusive, and dishonest nature.

4) Ms. Cloonan's actions in filing repeated false complaints against Mr. Barnes knowing that they are false appears to be a violation of Offense #22, Falsification, misstatement, exaggeration or concealment of material fact in connection with employment, promotion, travel voucher, any record, investigation or other proper proceeding. Ms. Cloonan's actions in filing repeated false complaints would constitute numerous infractions under Offense #22 as stated above.

Relevant case law is William E. Curdy v. Department of Veterans Affairs, February 11, 2005 where the U.S. Court of Appeals, Federal Circuit, and the Circuit essentially stated that an employee claiming to be involved in protected activities (as evidently Ms. Cloonan does) did not justify acting in a threatening, hostile or disruptive way. They upheld an employee's removal for threatening behavior towards a supervisor, creating a hostile work environment, failure to follow instructions, using insulting language toward a supervisor and five counts of disrespectful conduct. The Judge also upheld the

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

Mr. Joseph M. Band, Senior Counsel
October 22, 2007
Page 4

removal over an affirmative defense of the Whistleblower Protection Act. Ms. Cloonan's actions clearly parallel the facts in the Curdy case on the specifications.

Finally, an employee that has committed wrongful acts, just like we believe Ms. Cloonan has, and claims to be a whistleblower may not shield herself from any agency disciplinary action through invocation of the Whistleblower Protection Act (WPA). Ms. Cloonan evidently claims to be a Whistleblower which in all probability caused the agency not to take personnel actions against her aberrant behavior. To invoke the WPA to shield oneself from the consequences of one's own wrongful actions runs counter to the very heart of the WPA's intention of eliminating Government illegality, waste, and corruption. The statutory language and the legislative intent behind the WPA, clearly states that an employee cannot invoke the WPA to shield herself from the negative consequences of her own wrongful actions. The relevant legal provision is Whistleblower Protection Act of 1989, 101 P.L. 12; 103 Stat. 16 Section 1221 (e) (1) and (2).

In conclusion, please refer all correspondence to Mr. Jacob Stein regarding any case, action or matter that involves Mr. Barnes. Ms. Cloonan's most current EEO filing and MSPB case is evidently about claims of retaliation for prior EEO activity, in which her disruptive and aberrant behavior were documented. There is not one scintilla of evidence that Mr. Barnes had anything to do with Cloonan's new assignment, and was not involved in the USMS's action, as he had not been involved in her new chain of command.

Very truly yours,

Paul T. Stein

cc: Mr. Scott J. Bloch, Director, U.S. OSC
    Mr. Kevin Byrnes, Esquire
    Mr. John F. Clark, Director USMS
    Mr. Anthony W. Cummings, MSPB Administrative Judge (Atlanta)
    Ms. JoAnn Grady, USMS EEO Office
    Mr. Jacob A. Stein, Esquire

L:\CLIENTS\S\STEIN.PAU\BARNES\001-L-BAND.LTR.doc



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-254-3600

Ms. Sheila Cloonan
c/o Kevin Byrnes
Wade & Byrnes, P.C.
616 North Washington Street
Alexandria, Virginia 22314

SEP 6 2007

AUG 3 1 2007

Re: **OSC File No. MA-07-2064**

Dear Ms. Cloonan:

By letter dated July 19, 2007, we informed you of our preliminary determination not to take action on your complaint. We have received and reviewed the comments you sent in response to our preliminary determination. However, we contacted your attorney, Kevin Byrnes, on August 7, 2007, to request additional information regarding your complaint. We requested that this information be received by August 14, 2007. On August 7, 2007, we received an automatic out-of-office message from your attorney indicating that he would be on vacation until August 14, 2007. Per the instructions in that out-of-office message, we contacted Matthew Sutter on August 7, 2007, regarding the additional information necessary for us to make a decision regarding the disposition of your complaint. Mr. Sutter returned our call on August 8, 2007, and reiterated that Mr. Byrnes was out of the office. He suggested that we email our questions to him and that he would discuss the matter with Mr. Byrnes. Our questions were forwarded to Mr. Sutter on August 8, 2007.

Mr. Byrnes also responded via a personal email account on August 8, 2007, verifying that he would be unavailable until August 14, 2007. We extended the period for your response accordingly, and requested the information no later than August 22, 2007. We have not received any response at this time.

It appears that retaliation for engaging in whistleblowing activity may have occurred. However, because your legal representative repeatedly ignored requests for specific and pertinent information, initially requested on August 7, 2007, we are unable to make a legal determination in your favor. Accordingly, we have closed our file on your complaint. When and if you are able to provide the requested information, you can ask that we reopen your complaint.

We are also sending to you a separate letter discussing rights that you may have to seek corrective action from the Merit Systems Protection Board (the Board). Because you alleged reprisal for whistleblowing under 5 U.S.C. § 2302(b)(8), you may have a right to seek corrective action from the Board under the provisions of 5 U.S.C. sections 1214(a)(3) and 1221. A request for corrective action may be filed with the Board within sixty-five (65) days after the date of this letter. The Board's regulations concerning rights to file a corrective action case with the Board can be found at 5 C.F.R. Parts 1201-1206 and 1209.

Sincerely,

Martha V. Sheth
Attorney
Complaints Examining Unit

# Exhibit 2

**U.S. Department of Justice**

United States Marshals Service

0213

*Washington, DC 20530-1000*

SEP 29 2006



**CERTIFIED MAIL NUMBER: 7004 2510 0002 9226 9957**

George Retos, Esquire
103 Lemoyne Avenue
Washington, Pennsylvania 15301

      **Re:**    **Sheila Cloonan**
                 **Docket Number: M06-0016**

Dear Mr. Retos:

      The investigation of your client's formal complaint of discrimination is completed, and the Report of Investigation is enclosed for your review. This is your Notice of Right to Request a Hearing or Final Agency Decision. All time frames for exercising your right of election will commence upon your receipt of this letter.

      A copy of this report also is being forwarded to your client. This report is subject to the provisions of the Privacy Act of 1974 (5 USC 552a). Some of the statements and other documents contained in this report may include information of a personal and sensitive nature. Therefore, you should be mindful of this fact before revealing or providing any such information to a third party. Additionally, Department of Justice (DOJ) employees may be subject to formal disciplinary action and/or criminal prosecution for the unauthorized use of DOJ records in this matter.

      In accordance with 29 CFR Part §1614, you must now either:

(1)     Request a hearing by an Equal Employment Opportunity Commission (EEOC) Administrative Judge. If you request a hearing by an EEOC Administrative Judge, you must notify the appropriate Equal Employment Opportunity Commission District Office in writing, within **30 calendar days** of receipt of this notice, that you desire a hearing. A Request for Hearing Form is included with this letter for your use.

# Exhibit 3

-2-

If you request a hearing, you are expected to proceed without delay in presenting your complaint before the assigned Administrative Judge. You should begin preparing a list of your proposed witnesses, with a summary of the testimony you believe each would present at the hearing. The EEOC Administrative Judge will require this list after being assigned to your case.

After the hearing, the EEOC Administrative Judge will forward his/her findings and decision to the Complaint Adjudication Officer (CAO), Department of Justice. The CAO will review the entire record and will issue a final agency action on your complaint.

Failure to prosecute the instant complaint in a timely fashion may be grounds for the EEOC Administrative Judge to return your case to the Department of Justice. The Department of Justice may then move to dismiss your complaint or issue a final decision on the evidence in the complaint file; or,

(2)    Request a final agency decision (FAD) without a hearing. You must submit a written request for a final agency decision to the U.S. Marshals Service EEO Director within **30 calendar days** of receipt of this notice. If you fail to respond within 30 calendar days, a final decision on your complaint will be issued based on the complaint file.

You are free to request that your client's complaint be withdrawn at any stage of the complaint process. If you wish to withdraw your client's complaint, you must submit a written statement to the EEO Division expressing your desire to do so. A combination FAD/withdrawal request form is enclosed for your use if you elect either of these options.

In accordance with 29 CFR §1614.408, the limitations period for filing a civil action lawsuit is 90 calendar days from the complainant's attorney's receipt of the agency's final decision, or the EEOC decision on an appeal. A civil lawsuit also may be filed after 180 calendar days have passed from filing an appeal with EEOC's Office of Federal Operations, if no final decision on your client's appeal has been rendered. If you desire to file a civil lawsuit in Federal District Court, you must name the Attorney General as the defendant. Your failure to name the Attorney General may result in the loss of any judicial redress to which you may be entitled. Pursuant to 29 CFR §1614.409, the filing of a civil lawsuit will terminate EEOC's processing of an appeal on the same matter.

- 3 -

       If you have any questions, please contact Joann W. Grady, Chief, Complaints Processing, on (202) 307-9048.

Sincerely,

Lisa M. Dickinson
EEO Officer

Enclosures:
1. Request for a Hearing Form
2. Immediate Final Agency Decision/Withdrawal Form
3. Report of Investigation

cc:    Ms. Sheila Cloonan (with enclosures)
       105 Jefferson Circle
       Atlanta, Georgia 30328

**U.S. DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHEILA CLOONAN                    )
                                  )
   Plaintiff,          )
                                  )
v.                                ) Civil Action No. 1:08-cv-0700 (HHK)
                                  )
MICHAEL B. MUKASEY, et al.        )
                                  )
   Defendants.         )
_____)


## <u>ORDER</u>

  Having read and considered the Federal Defendants' Motion to Dismiss And For

Summary Judgment As To Plaintiff's Privacy Act and Defamation Claims, Plaintiff's Opposition

and Defendants' Reply thereto, and the record herein, it is, this _____ day of

_____, 2008,

   **ORDERED**, that the Federal Defendants' Motion to Dismiss and For Summary

Judgment be, and the same hereby is, **DENIED**.


        _____
        HENRY H. KENNEDY, JR.
        Judge, United States District Court for
        the District of Columbia